**RECORD NO. 13-1214**

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

---

ROGER JALDIN;
JANET JALDIN,

*Plaintiffs-Appellants,*

v.

RECONTRUST COMPANY, N.A.;
BANK OF AMERICA, N.A.;
JOHN DOE,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA, AT ALEXANDRIA
The Honorable Anthony John Trenga, U.S. District Judge

---

**OPENING BRIEF OF APPELLANTS**

---

Gregory Bryl
BRYL LAW OFFICES
1629 K Street, NW, Suite 300
Washington, DC 20006
(202) 360-4950  Telephone
help@bryllaw.com

*Counsel for Appellants*                                    June 17, 2013

**LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477**
**A Division of Lantagne Duplicating Services**

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1214__      Caption: _Jaldin et. al. v. ReconTrust Company, N.A., et. al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Janet Jaldin_____
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                              ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _/s/ Gregory Bryl_____      Date: ___March 1, 2013____

Counsel for: _Appellants_____

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on ____March 1, 2013____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Joseph Patry, Esq.
Blank Rome LLP
600 New Hampshire Ave NW
Washington, DC 20037

_/s/ Gregory Bryl_____               ___March 1, 2013____
        (signature)                                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1214       Caption: Jaldin et. al. v. ReconTrust Company, N.A., et. al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Roger Jaldin
(name of party/amicus)

who is _____ Appellant _____, makes the following disclosure:
     (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                      ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Gregory Bryl                    Date:    March 1, 2013

Counsel for: Appellants

## CERTIFICATE OF SERVICE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _____March 1, 2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Joseph Patry, Esq.
Blank Rome LLP
600 New Hampshire Ave NW
Washington, DC 20037

/s/ Gregory Bryl                                   March 1, 2013
        (signature)                                       (date)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF JURISDICTION ................................................................. 1

STATEMENT OF THE ISSUES ...................................................................... 1

STATEMENT OF THE CASE .......................................................................... 2

STATEMENT OF THE FACTS ........................................................................ 4

    A.   The Loan Transaction ....................................................................... 4

    B.   Alleged Default and Related Correspondence ................................. 6

    C.   Procedural History ............................................................................ 10

SUMMARY OF ARGUMENT ........................................................................ 11

ARGUMENT ................................................................................................... 13

    I.    Standard of Review ........................................................................... 13

    II.   Virginia's § 55-58.1(2) is not preempted by federal law ............... 13

         A.   Congress did not intend to preempt state foreclosure laws, including Virginia's § 55-58.1(2) because such laws fall within the ambit of specifically exempt areas of "contracts" and "debt collection." ..................................................................... 15

         B.   NBA's § 92a does not cover the acts of deed-of-trust trustees because such trustees are not true fiduciaries ..................... 18

         C.   There is no conflict preemption of § 55-58.1(2) ................................ 23

    III.  ReconTrust breached the DOT because it did not comply with Section 55-58.1 ..................................................................................... 26

IV.   BOA, ReconTrust, and Doe breached the terms of the DOT, so that
      Counts II, IV, and V should not have been dismissed...............................27

      A.   The right to accelerate and the power of sale did not accrue under
           the terms of the DOT ........................................................................28

      B.   The pre-acceleration notice was not given by Lender or its
           successor, in violation of the terms of the DOT ..................................30

V.    John Doe is liable for failing to disclose its name to the Jaldins directly
      (under §1641(g)) or through BOA (under §1641(f)(2)) ...........................32

VI.   BOA and ReconTrust violated the FDCPA...............................................35

VII.  The Jaldins properly alleged all the required elements of a "remove
      cloud on title" claim.................................................................................37

CONCLUSION ....................................................................................................40

REQUEST FOR ORAL ARGUMENT ..................................................................40

CERTIFICATE OF COMPLIANCE.......................................................................41

CERTIFICATE OF SERVICE ..............................................................................42

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Sara Lee Corp.*,
    508 F.3d 181, 191 (4th Cir. 2007) ................................................................15

*Atherton v. FDIC*,
    519 U.S. 213, 117 S. Ct. 666 (1997)............................................................17

*BFP v. Resolution Trust Corp.*,
    511 U.S. 531, 114 S. Ct. 1757 (1994)..........................................................16

*Bayview Loan Servicing v. Simmons*,
    654 S.E.2d 898, 275 Va. 114 (Va. 2008).....................................................28

*Belote v. Bank of Am., N.A.* ,
    No. 3:12CV526-JRS (E.D. Va. Dec. 18, 2012)...........................................29

*Bradford v. HSBC Mortg. Corp.*,
    829 F. Supp. 2d 340 (E.D. Va., 2011) .........................................................32

*Carter v. Countrywide Home Loans, Inc.*,
    2008 U.S. Dist. LEXIS 67014, 2008 WL. 4167931 (E.D. Va. 2008) ..........22

*Cenat v. U.S. Bank, N.A.*,
    No. 12-80663 (S.D. Fla. March 18, 2013)...................................................34

*College Loan Corp. v. SLM Corp.*,
    396 F.3d 588 (4th Cir. 2005) ......................................................................15

*Consumer Solutions Reo, LLC v. Hillery*,
    2010 U.S. Dist. LEXIS 37857 (N.D. Cal. Mar. 24, 2010) ..................... 33-34

*Danier v. Federal National Mortg. Association*,
    No. 12-62354 (S.D. Fla. Feb. 7, 2013) ........................................................34

*Davis v. Greenpoint Mortg. Funding, Inc.*,
    No. 1:09-CV-2719-CC-LTW, 2011 WL. 7070221
    (N.D. Ga. Mar. 1, 2011)..........................................................................33, 34

iii

*E.E.O.C. v. Seafarers International Union*,
   394 F.3d 197 (4th Cir. 2005) ........................................................................13

*Epps v. JP Morgan Chase Bank, N.A.*,
   675 F.3d 315 (4th Cir. 2012) ......................................................................14

*Fairmount Glass Works v. Cub Fork Coal Co*,
   287 U.S. 474 (1933) .....................................................................................26

*Fleet Fin. v. Burke & Herbert Bank and Trust*,
    27 Va. Cir. 98, 1992 WL 884461(Va. Cir. Ct. 1992) .................................22

*Gaitan v. MERS*,
    2009 U.S. Dist. LEXIS 97117, 2009 WL 3244729 (C.D. Cal. 2009) ...........20

*Gilbert v. Residential Funding LLC*,
   678 F.3d 271 (4th Cir., 2012) ......................................................................13

*H&R Block East Enterprises v. Raskin*,
   591 F.3d 718 (4th Cir. 2010) ......................................................................15

*Horvath v. Bank of New York, N.A.*,
    2010 U.S. Dist. LEXIS 19965, 2010 WL 538039
    (E.D. Va. Jan. 29, 2010), *aff'd*, 641 F.3d 617 (4th Cir. 2011) .....................22

*Khan v. Bank of N.Y. Mellon*,
   No. 12-60128, 2012 WL 1003509 (S.D. Fla. 2012) ......................................34

*Kissinger v. Wells Fargo Bank, N.A.*,
   No. 12-60878 (S.D. Fla. Aug. 30, 2012) ......................................................34

*Maine v. Adams*,
   227 Va. 230, 672 S.E.2d 862 (2009) ...........................................................38

*Mathews v. PHH Mortgage Corp.*,
   2012 Va. LEXIS 90 (Va. Apr. 20, 2012)................................... 27, 28, 29, 38

*Matza v. Countrywide Home Loans, Inc.*,
   No. 2:09-CV-217 (D. Nev. June 26, 2012)...................................................34

iv

*Monterey SP Partnership v. WL Bangham*,
    777 P.2d 623, 49 Cal. 3d 454 (1989) ............................................................21

*Mylan Laboratoriess, Inc. v. Matkari*,
    7 F.3d 1130 (4th Cir. 1993) ........................................................................13

*National City Bank of Ind. v. Turnbaugh*,
    463 F.3d 325 (4th Cir. 2006) ......................................................................14

*National Bank v. Commonwealth*,
    76 U.S. 353 (1870)......................................................................................18

*OCC Interpretive Letter*
    No. 1005, 2004 WL. 3465750 ....................................................................17

*Pham v. Bank of N.Y.*,
     856 F. Supp. 2d 804 (E.D. Va. 2012) ........................................................21

*Pjnegard-Guirma v. Bank of America, NA* ,
    No. 3:10-cv-01065-PK (D. Or. Apr. 2, 2012) ............................................34

*Quality Properties Asset Management Co. v. Trump Va. Acquisitions, LLC*,
    2011 U.S. Dist. LEXIS, 1 (W.D. Va. 2011) ...............................................39

*Sheppard v. BAC Home Loans Servicing, LP*,
    2012 U.S. Dist. LEXIS 7654, 2012 WL 204288
    (W.D. Va. Jan. 24, 2012) ......................................................................21, 22

*Sincere v. BAC Home Loans Servicing, L.P.*,
    2011 U.S. Dist. LEXIS 149650 (W.D. Va. Dec. 30, 2011).............20, 21, 22

*Watters v. Wachovia Bank, N.A.*,
    550 U.S. 1, 127 S. Ct. 1559 (2007)............................................................16

*Woodrow v. MacFaydyen*,
     788 F. Supp. 2d 464 (E.D. Va. 2011)........................................................36

*Wyeth v. Levine*, 555 U.S. 555, 129 S. Ct. 1187,
    173 L. Ed. 2d 51 (2009) .......................................................................14, 17

# REGULATIONS

12 C.F.R. § 34.4(a) .................................................................................16

12 C.F.R. §34.4(b) ..................................................................................26

12 C.F.R. § 9.7(d) ...................................................................................20

# STATUTES

1 U.S.C. § 3-203 ....................................................................................32

12 U.S.C. § 1 *et seq.* ....................................................................1, 13, 15

12 U.S.C. § 34.4 .....................................................................................15

12 U.S.C. § 34.4(a) *supra* .....................................................................17

12 U.S.C. § 38 .........................................................................................13

12 U.S.C. § 92a ................................................................................19, 20

12 U.S.C. § 92a(a)-(d) ............................................................................20

15 U.S.C. § 1602(g) ................................................................................36

15 U.S.C. § 1640(a) ..........................................................................33, 34

15 U.S.C. § 1641 ..............................................................................2, 3, 12

15 U.S.C. § 1641(f) ........................................................... 32, 33, 34, 35

15 U.S.C. § 1641(f)(1) ............................................................................30

15 U.S.C. § 1641(f)(2) .................................................................32, 33, 34

15 U.S.C. § 1641(g) .........................................................................32, 33

15 U.S.C. § 1692 *et seq* ..........................................................................3

15 U.S.C. § 1692(a)(4) ............................................................................36

15 U.S.C. § 1692(a)(6) ............................................................................36

15 U.S.C. § 1692e .....................................................................................35

15 U.S.C. § 1692f .....................................................................................35

26 U.S.C. § 581 .......................................................................................19

26 U.S.C. § 584 .......................................................................................19

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. §1331 ........................................................................................1

28 U.S.C. § 1367 .......................................................................................1

Va.Code § 8.3A–203 ...............................................................................32

Va. Code § 55-58.1 ..........................................................................*Passim*

Va. Code § 55-58.1(2)......................................................................*Passim*

## OTHER AUTHORITIES

Real Estate Lending and Appraisals, 69 Fed. Reg. 1904-01, at 1912 & n.59
(Jan. 23, 2004) ..................................................................25

22 RICHARD A. LORD, WILLISTON ON CONTRACTS § 60:27 (4th ed.) ......................32

15 MICHIE'S JURISPRUDENCE, QUIETING Ttile § 2 (2012).......................................38

15 MICHIE'S JURISPRUDENCE, QUIETING TITLE § 11  ..............................................39

## RULES

Federal Rule of Civil Procedure 12(b)(6) .............................................................13

vii

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 over the claims arising under the Truth In Lending Act (TILA), Federal Debt Collection Practices Act (FDCPA), and claims requiring the resolution of a federal preemption issue. The district court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the claims arising under Virginia law and not requiring the resolution of a federal preemption issue. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because the district court dismissed all of the claims in this action by a final Order of January 18, 2013, and a notice of appeal of that Order was filed on February 12, 2013.

## STATEMENT OF THE ISSUES

Whether contract and debt collection laws of Virginia (including § 55-58.1) and of the other 49 states can be avoided by establishing an entity and federally registering it as a "national bank," and then using such entity solely to collect debts by foreclosure. The resolution of this issue turns on whether Va. Code § 55-58.1(2), requiring that every deed-of-trust trustee and co-trustee be a Virginia entity, is preempted by the National Bank Act, 12 U.S.C. § 1 *et seq.*

Whether a pre-acceleration notice affording a 27-day action period constitutes a violation of the terms of a deed-of-trust requiring a 30-day action

-1-

period and, if so, whether such a violation is sufficient to prevent the power of sale from accruing.

Whether TILA provides a private right of action for violations of § 1641 against the creditor and/or assignee and, if so, whether retaining counsel to obtain information required to be disclosed by that section after non-disclosure constitutes actual damages.

Whether a servicer using its wholly-owned subsidiary as foreclosure "trustee" violates the FDCPA and is liable for such a violation under the FDCPA's exemption from the creditor exclusion.

## STATEMENT OF THE CASE

This case arises out of attempted foreclosure on residential property in Virginia by an out-of-state entity appointed by its sole owner-parent corporation and not by the "Lender" (as that term is defined in the underlying deed of trust), where the foreclosing entities misidentified the owner of the obligation, and where the contemplated foreclosure was cancelled after the borrowers filed suit to stop it, only to be re-scheduled during this litigation and then cancelled again after the matter was made known to the foreclosers' counsel in this litigation.

This case raises the issue of whether the contract and debt collection laws of Virginia (including foreclosure laws), as well as those of the other 49 states, can be avoided by merely registering an entity as a "national bank" and then using

such entity solely to collect debts by foreclosure and not to engage in any banking activity.

The foreclosure at issue was attempted in Virginia by an out-of-state entity (ReconTrust) registered as a "national bank" but not engaged in any banking activity, and appointed as a Virginia deed-of-trust trustee by its sole parent company (BOA). In attempting to collect a debt by foreclosure, BOA and ReconTrust misidentified to the Jaldins the "owner of the obligation" within the meaning of 15 U.S.C. § 1641 and the "creditor to whom the debt is owed" within the meaning of 15 U.S.C. § 1692 *et seq.* By doing so, BOA and ReconTrust misidentified to the Jaldins the risk-bearer of their loan, i.e., the party directly interested in the repayment of the loan and directly affected by any repayment or non-repayment of said loan. As a result, the Jaldins were unable to communicate with the party having the proper financial incentives in dealing with any alleged default, and were not able to ascertain the identity of such party until after they hired counsel and incurred related expenses.

The Jaldins challenged the appointment and the actions of "out-of-stater" ReconTrust taken in its purported capacity of a Virginia deed-of-trust trustee. The Jaldins also challenged the failure to give a proper pre-acceleration notice, misidentification of the owner of the obligation and the creditor to whom the debt is owed. The trial court dismissed the claims ruling that the use of an out-of-state

-3-

entity as a deed-of-trust trustee was permissible due to federal preemption of applicable Virginia law, and that any other violations were inconsequential. The Jaldins now appeal that ruling.

## STATEMENT OF THE FACTS

Appellants (Plaintiffs below) Roger and Janet Jaldin are residents of Virginia and owners and title holders of the property located at and commonly known by the following address: 7370 Kincheloe Road, Clifton, VA 20124 ("Property"). JA at 222, 328.

### A.      The Loan Transaction

On or about May 9, 2007, Roger Jaldin executed a document styled as a deed of trust ("DOT") referencing the Property and purporting to secure a loan ("Loan") evidenced by a promissory note ("Note") referenced in the DOT. JA at 44, 94, 223. The DOT names "Countrywide Home Loans, Inc. dba America's Wholesale Lender" as the "Lender" thereunder. JA at 45. The DOT "secures to Lender (i) the repayment of the Loan . . . and (ii) the performance of Borrower's covenants and agreements under [the DOT] and the Note." JA at 46. The DOT also provides in ¶ 13 that the "covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender." JA at 51. In Section 20, the DOT specifically differentiates between "Lender" and "Servicer" and their respective rights,

-4-

defining Servicer as an "entity . . . that collects periodic payments due under the Note . . . and performs other loan servicing obligations." JA at 52-53. The DOT provides that Lender's and Servicer's respective rights are transferred separately and independently of each other by stating in ¶ 20 that there "might be one or more changes of the Loan Servicer unrelated to a sale of the Note" and if "the Note is sold . . ., the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." *Id.* According to the DOT, a Servicer that is neither the payee on the Note nor the purchaser of the Note is neither the Lender nor the Lender or Lender's successor or assign (such as a Note purchaser). *Id.*

Under the terms of the DOT, mortgage servicing obligations do not include exercising Lender's remedies such as loan acceleration, which are reserved to the Lender by providing in ¶ 22 that it is "Lender [that] shall give notice to Borrower prior to acceleration" and that it is "Lender [that] at its option may require immediate payment in full . . ., invoke the power of sale and any other remedies." JA at 53-54. Lastly, the DOT provides in ¶ 16 that "[a]ll rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law" defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that

-5-

have the effect of law) as well as all applicable final, non-appealable judicial

opinions." JA at 52.

### B.    Alleged Default and Related Correspondence

On November 19, 2010 or later, BOA's alleged predecessor-in-interest,

BAC Home Loans Servicing, LP, sent to Roger Jaldin ("Jaldin") a letter entitled

"Notice of Intent to Accelerate" and requiring Jaldin to cure an alleged default on

the subject loan "on or before December 16, 2010." JA 58-60, 224. The

above-referenced letter was delivered to Jaldin on November 22, 2010. JA at 61,

224. The DOT provides in ¶ 15 that a notice to Borrower thereunder (Jaldin) is

deemed "given to Borrower when mailed by first class mail and when actually

delivered to Borrower's notice address if sent by other means." JA at 52.

On or about October 26, 2011, a document styled as a "Substitution of

Trustee(s)" was executed on behalf of BOA, purporting to appoint ReconTrust as a

successor trustee under the DOT.[1] JA at 97-98, 225. The document states that,

upon recording, it should be returned to ReconTrust's office in Texas. *Id.* On or

about October 27, 2011, ReconTrust sent Jaldin a letter purporting to accelerate

---

[1] The document also appoints "ALG Trustee, LLC," allegedly "of the city of Leesburg, VA," as a co-trustee, but this is irrelevant because only ReconTrust acted as trustee in this case, JA at 221-241, and because Va. Code § 55-58.1(2) prohibits an out-of-state co-trustee as well. *See id.* ("[n]o [out-of-state] corporation may be named or act as the trustee <u>or as one of the trustees</u> of a security trust") (emphasis added).

the loan referenced in the DOT.  JA at 225.  The letter was mailed at the direction of ReconTrust's sole owner BOA and from Texas or other place outside Virginia. *Id.*

Some time in November – December 2011, ReconTrust sent Jaldin an undated letter (enclosed in an undated and un-stamped envelope) purporting to serve as a notice of an upcoming "trustee's sale" and instructing him to contact, *inter alia*, ReconTrust's principal office in Texas.  *Id.*  The letter was mailed from Texas or other place outside Virginia and did not contain either a street address or a phone number of a Virginia trustee.  *Id.*  Some time in April 2012 and July 2012, ReconTrust again sent Jaldin an undated letter (enclosed in an undated and un-stamped envelope) purporting to serve as a notice of an upcoming "trustee's sale" and instructing him to contact, *inter alia*, ReconTrust's principal office in Texas.  JA at 226.  The letter was mailed from Texas or other place outside Virginia and did not contain a street address of a Virginia trustee.  *Id.*[2]

ReconTrust is not chartered under the law of the Commonwealth of Virginia or under federal law as required by Va. Code § 55-58.1(2).  JA at 101; 226. ReconTrust has failed to maintain and does not maintain its principal office within the Commonwealth of Virginia as required by Va. Code § 55-58.1(2).  *Id.*

---

[2] The phone number on that letter, when dialed, yields an automated voice response from "Atlantic Law Group."

On or about October 27, 2011, upon request by the Jaldins, ReconTrust sent Roger Jaldin a letter identifying BOA as the creditor to whom the debt is owed. JA at 225. The letter did not contain either a street address or a phone number within Virginia. JA at 227. On or about November 5, 2011, the Jaldins requested in writing from BOA the identity of the owner of the debt. JA at 235. On December 2, 2011, BOA sent a written response to the Jaldins stating that the "Owner of [the] loan . . . is . . . Bank of America, N.A. . . . for the Benefit of the Halo 2007-2 Trust." *Id.* On or about December 5, 2011, Jaldin requested the identity of the owner of the loan from MERS and received a response that it was "HSBC Bank USA, National Association." *Id.*

On February 1, 2012, BOA, through its attorneys Blank Rome, LLP, sent another written response to the Jaldins, identifying the "current owner" as "Bank of America, N.A. . . . for the benefit of the HALO 2007-2 Trust." JA at 236. Subsequently to the above response of the BOA, the Jaldins, through counsel, located the publically available documents for the HALO 2007-2 Trust, including the trust agreement, and found that said documents do not reference BOA, either as trustee or in any other capacity. *Id.*

 On or about April 25, 2012, the Jaldins, by counsel, wrote to BOA and to BOA's principal (c/o of BOA) and again requested the identity of the owner of the debt. JA at 236. On or about May 11, 2012, the Jaldins received BOA's response,

-8-

this time stating that the owner of the debt was "Deutsche Bank National Trust
Company, as Trustee for holders of the HSI Asset Loan Obligation Trust 2007-2."
*Id.* This identification is the same as that in the publically available trust
agreement with respect to the HSI Asset Loan Obligation (HALO) 2007-2 Trust.
*Id.*

On or about April 26, 2012, the Jaldins, by counsel, informed BOA that
Lender's successor was in breach of the terms of the DOT for failing to provide a
proper pre-acceleration notice in compliance with the terms of the DOT.  JA at
226.  The same day, the Jaldins, by counsel, informed ReconTrust that it was
purporting to act as a deed-of-trust trustee or co-trustee in violation of Virginia
law. *Id.* In July – August, 2012, ReconTrust sent another letter to Roger Jaldin
informing him that a "trustee's sale" of the Property was scheduled for September
11, 2012.  JA at 99, 226.  The letter did not include a street address of a Virginia
trustee. *Id.*[3]

At all times relevant hereto, the Jaldins did not receive any letter purporting
to be from a Virginia deed-of-trust trustee sent from within Virginia and
containing a Virginia street address for such trustee.  JA at 227.  At all times
relevant hereto, BOA was acting or purporting to act as an agent on behalf of

---

[3] The phone number on that letter, when dialed, yields an automated voice
response from "Atlantic Law Group."

another entity that may or may not be a true successor to the Lender under the terms of the DOT. *Id.*

### C.     Procedural History

After informing ReconTrust and BOA that those entities were acting in violation of Virginia law and nonetheless receiving notice that a foreclosure sale was scheduled for September 11, 2012, the Jaldins filed suit in the Circuit Court of Fairfax County, Virginia on August 24, 2012. JA at 13. Contemporaneously with that filing, the Jaldins also moved for a preliminary injunction prohibiting the scheduled foreclosure sale. JA at 30.

In response to the suit and request for preliminary injunction, BOA and ReconTrust cancelled the September 11, 2012 sale and removed the case to the Eastern District of Virginia. JA at 1, 75. BOA and ReconTrust then moved to dismiss the case arguing that the claims had become moot due to the cancellation of the sale, that § 55-58.1 was preempted by federal law, and that the Jaldins were otherwise not entitled to relief. JA at 71-102. The Jaldins opposed the motion, arguing that the issue was capable of repetition yet evading review, that Congress did not intend to preempt Virginia's and the other 49 States' foreclosure laws, and that the Jaldins were otherwise entitled to relief. JA at 104-178. On November 9, 2012, the trial court granted BOA's and ReconTrust's motion to dismiss with leave to amend. JA at 220.

On November 23, 2012, the Jaldins filed their Amended Complaint.  JA at

4.  BOA and ReconTrust again moved to dismiss the case on December 14, 2012

on similar grounds, including mootness.  However, some time prior to the

December 14, 2012 motion to dismiss, the foreclosure sale was again re-scheduled

for January 8, 2013.  Counsel for BOA and ReconTrust in this case was not aware

of this rescheduling.  JA at 277.  It was only after the Jaldins' counsel informed

opposing counsel of the newly-scheduled sale that the January 8, 2013 sale was

cancelled.  *Id.*[4]

The Jaldins again opposed BOA and ReconTrust's motion to dismiss.  JA at

271-301.  After a hearing on January 18, 2013, JA at 321, the trial court dismissed

the Amended Complaint without leave to amend.  JA at 338.  The Jaldins have

appealed that ruling.  JA at 339.

## SUMMARY OF ARGUMENT

The district court erred in dismissing the Jaldins' claims challenging

ReconTrust's appointment and actions as a deed-of-trust trustee.  ReconTrust,

notwithstanding its registration as a "national bank," does not engage in the

---

[4] The issue of the September 11, 2012 scheduled and cancelled sale thus repeated itself with the January 8, 2012 scheduled sale which was not cancelled until the Jaldins' counsel brought the matter to opposing counsel's attention.  *Cf.* JA at 213 (trial court viewing the issue of the cancelled sale as "moot or premature" in spite of the Jaldins argument that the sale may be re-scheduled at any time either intentionally or by mistake).

business of banking and must comply with § 55-58.1(2) requiring every deed-of-trust trustee to be a Virginia entity.  Additionally, no deed-of-trust trustee was appointed by "Lender's successor" as required by the Deed of Trust.

The 27-day pre-acceleration notice curtailed the Jaldins' substantive right to a 30-day action period and thus did not result in accrual of the power of sale.  The Deed of Trust specifically contemplates the existence of a default and the conditions imposed upon Lender thereunder do not depend on any cure attempts.  No was such notice provided by "Lender's successor" as required by the Deed of Trust.  The Jaldins thus were entitled to declaratory judgment that the power of sale did not accrue and that, absent a compliant pre-acceleration notice, no further steps toward foreclosure could be taken.  The Jaldins' breach of contract claim based on the same defects was likewise properly stated.

BOA and its principal John Doe violated TILA's § 1641 by failing to disclose the identity of the "owner of the obligation" as required by that section.  In 2009, Congress amended TILA to include a private right of action for violation of any portion of the statute, including § 1641.  The Jaldins were entitled to a proper disclosure and were not able to obtain it until they hired counsel and incurred expenses in pursuing information to which they were clearly entitled under the law.

-12-

BOA and ReconTrust violated the FDCPA misidentifying the "creditor to whom the debt is owed," by employing an out-of-state entity in collecting the subject debt, and by other related acts. Both are subject to the FDCPA. ReconTrust is a debt collector by definition and based on this Circuit's precedent. BOA does not enjoy the "creditor exclusion" in this case because it used the name of another (ReconTrust) to collect the subject debt.

## ARGUMENT

### I.     Standard of Review

The dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*. *See Gilbert v. Residential Funding LLC*, 678 F.3d 271, 274 (4th Cir., 2012); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In its review, the Appellate Court "construes the evidence in the light most favorable to the non-movant," *E.E.O.C. v. Seafarers Int'l Union*, 394 F.3d 197, 200 (4th Cir. 2005), and "should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff," *Mylan Labs.*, 7 F.3d at 1134; *see also Gilbert*, 678 F.3d at 274 (same).

### II.     Virginia's § 55-58.1(2) is not preempted by federal law.

The district court agreed with BOA and ReconTrust that § 55-58.1(2) is preempted by § 92a under 12 U.S.C. § 1 *et seq.*, a federal statute known as the "National Bank Act" (*see* 12 U.S.C. § 38) or "National Banking Act" ("NBA").

-13-

JA at 331-332.  The district court's ruling leads to an absurd result whereby registering a new entity as a "national bank" without engaging in any banking activities and then using such entity to collect debts by foreclosure allows one to defeat any State's contract and debt collection laws, including Virginia's.  The ruling contradicts the established bounds of federal preemption and the scope and plain language of the statute, and therefore should *not* be upheld.

To begin, Virginia's contract and debt collection laws are presumed to be valid and *not* preempted by federal law.  "Courts generally apply a presumption against federal preemption in fields the states traditionally regulate."  *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 321-322 (4th Cir. 2012) (quoting *Nat'l City Bank of Ind. v. Turnbaugh*, 463 F.3d 325, 330 (4th Cir. 2006)).  Deed-of-trust trustees and their actions, including foreclosure-related actions, have traditionally fallen within the fields of contract and debt collection, fields traditionally regulated by the States.

In conducting preemption analysis, courts are guided first and foremost by the maxim that "the purpose of Congress is the ultimate touchstone in every pre-emption case."  *Epps*, 675 F.3d at 322 (citing *Wyeth v. Levine*, 555 U.S. 555, 564, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009)).  It stretches reason to hold that the purpose of the NBA was to preempt or displace state laws pertaining to contracts and debt collection, such as state foreclosure laws.

-14-

"Federal law may preempt state law in three ways, denominated as express preemption, field preemption, and conflict preemption." *H&R Block East Enters. v. Raskin*, 591 F.3d 718, 722-723 (4th Cir. 2010) (citing *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595-96 (4th Cir. 2005)).  Field preemption occurs "when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation." *Id.*  Express preemption occurs "when Congress has clearly expressed an intention to [preempt state law]."  Conflict preemption "occurs when a state law actually conflicts with federal law." *Id.* (quoting *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007)).

**A.    Congress did not intend to preempt state foreclosure laws, including Virginia's § 55-58.1(2) because such laws fall within the ambit of specifically exempt areas of "contracts" and "debt collection."**

The NBA, codified at 12 U.S.C. §§ 1 *et seq.*, vests in nationally chartered banks certain enumerated powers pertaining to making loans and receiving deposits and "all such incidental powers as shall be necessary to carry on the business of banking."  12 U.S.C. § 34.4.  Notably, the NBA targets "the business of banking," not of "debt collection."  The NBA contains no express preemption of state foreclosure statutes, such as Va. Code § 55-58.1(2).  Under the NBA's implementing regulations, although "state laws that [interfere with] a national bank's ability to fully exercise its Federally authorized *real estate lending powers*

-15-

do not apply to national banks, . . . State laws on the following subjects are specifically enumerated as not inconsistent with the real estate lending powers of national banks and applicable to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers: (1) **Contracts**; (2) Torts; . . . (5) **Rights to collect debts**; (6) **Acquisition and transfer of real property**." 12 C.F.R. § 34.4(a) (emphasis added); *see also Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11, 127 S. Ct. 1559 (2007) (national banks remain subject to state usury laws, contract laws, and laws regarding "acquisition and transfer of real property").

There has never been a federal presence sufficient to displace the various types of state statutes governing foreclosure procedures. Foreclosure laws govern "acquisition and transfer of property," an area which the Supreme Court has already confirmed lies within states' presumed powers to regulate. *Id.*; *see also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 541-42, 114 S. Ct. 1757 (1994) ("the States have created diverse networks of judicially and legislatively crafted rules governing the foreclosure process, *to achieve what each of them considers the proper balance between the needs of lenders and borrowers*") (emphasis added). Indeed, if Defendants' and trial court's position were correct, the NBA would bring down every state's laws regarding foreclosure, which cannot be the "clear and

-16-

manifest purpose of Congress." *Wyeth*, 555 U.S. at 565 (addressing NBA preemption and concluding that banks remain subject to state laws regarding "acquisition and transfer of property"). Yet, federal law provides no legal framework for foreclosure. Instead, as the Supreme Court has repeatedly explained, the NBA leaves national banks "subject to the laws of the State," and banks "are governed in their daily course of business far more by the laws of the State than of the nation." *Atherton v. FDIC*, 519 U.S. 213, 222, 117 S. Ct. 666 (1997).

The U.S. Office of the Comptroller of the Currency (OCC) regulates national banks. The OCC's own words provide the requisite standard: "the [NBA preemption rule] only preempts the types and features of state laws pertaining to making loans and taking deposits that are specifically listed in the regulation." OCC Interpretive Letter No. 1005, 2004 WL 3465750. Not only are foreclosure-related laws not listed in the regulation, matters of "right to collect debts" and "acquisition and transfer of property" are specifically listed as non-preempted in the statute's implementing regulations. 12 U.S.C. § 34.4(a), *supra*. National banks (even real banks, unlike ReconTrust) are not immune to state laws that do not directly govern making loans and taking deposits, i.e., banking. "All their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts

-17-

are all based on state law." *National Bank v. Commonwealth*, 76 U.S. 353, 362

(1870). In short, the NBA was not intended to preempt state foreclosure laws,

including Virginia's § 55-58.1(2), as a matter of either express preemption of field

preemption.

**B.    NBA's § 92a does not cover the acts of deed-of-trust trustees because such trustees are not true fiduciaries.**

Since the primary purpose of the NBA is to delineate and regulate the

business of "banking" (i.e., taking deposits and making loans), a threshold issue to

be considered is whether § 92a of the NBA covers the appointment and acts of

deed-of-trust trustees at all. BOA and ReconTrust relied on NBA's § 92a to argue

that deed-of-trust trustees would be covered by the NBA because thus section

mentions "trustee(s)." However,§ 92a provides as follows:

> (a) Authority of Comptroller of the Currency. The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

> (b) Grant and exercise of powers deemed not in contravention of State or local law. Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by

-18-

national banks shall not be deemed to be in contravention of State or local law within the meaning of this Act.

© Segregation of fiduciary and general assets; separate books and records; access of State banking authorities to re-ports of examinations, books, records, and assets.  National banks exercising any or all of the powers enumerating [enumerated] in this section shall segregate all assets held in any fiduciary capacity from the general assets of the bank and shall keep a separate set of books and records showing in proper detail all transactions engaged in under authority of this section. The State banking authorities may have access to reports of examination made by the Comptroller of the Currency insofar as such reports relate to the trust department of such bank, but nothing in this Act [12 USCS §§ 92a and note, 248, and 26 USCS §§ 581, 584] shall be construed as authorizing the State banking authorities to examine the books, records, and assets of such bank.

(d) Prohibited operations; separate investment account; collateral for certain funds used in conduct of business.  No national bank shall receive in its trust department deposits of current funds subject to check or the deposit of checks, drafts, bills of exchange, or other items for collection or exchange purposes. Funds deposited or held in trust by the bank awaiting investment shall be carried in a separate account and shall not be used by the bank in the conduct of its business unless it shall first set aside in the trust department United States bonds or other securities approved by the Comptroller of the Currency.

12 U.S.C. § 92a.  From the plain text of the entire § 92a, it is apparent that it is not intended to cover the conduct of deed-of-trust trustees, including Virginia deed-of-trust trustees because such "trustees" are not "true trustees" under both Virginia law and the laws of most other States, and because the NBA speaks of a different kind of a "trustee."

-19-

In particular, § 92a covers "the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, . . . committee of estates of lunatics" and "any other fiduciary capacity," and speaks of "segregation of fiduciary and general assets; separate books and records; access of State banking authorities to reports of examinations, books, records, and assets," as well as of prohibition to "receive in its trust department deposits of current funds subject to check or the deposit of checks, drafts, bills of exchange, or other items for collection or exchange purposes," etc.  12 U.S.C. § 92a(a)-(d).  Likewise, § 92a's implementing regulation speaks of acts by a bank where it "accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decision regarding the investment or distribution of fiduciary assets."  12 C.F.R. § 9.7(d).  These are typical acts undertaken by *regular fiduciaries* such as guardians, executors, estate administrators, and true trustees managing the corpus of an express trust, as opposed to deed-of-trust "trustees."  Deed-of-trust trustees do not execute documents creating *fiduciary* relationships, nor do they invest or distribute fiduciary assets.

Indeed, Virginia law and the laws of other states expressly recognize that a deed-of-trust trustee is not a "true trustee" owing fiduciary duties.  *See*, *e.g.*, *Sincere v. BAC Home Loans Servicing, L.P.*, 2011 U.S. Dist. LEXIS 149650

-20-

(W.D. Va. Dec. 30, 2011); *Gaitan v. MERS*, 2009 U.S. Dist. LEXIS 97117, 2009 WL 3244729, *12 (C.D. Cal. 2009) (a "foreclosure trustee has no fiduciary duty to the borrower, since <u>a trustee in a non-judicial foreclosure is not a true trustee with fiduciary duties</u>, but rather a common agent for the trustor and beneficiary") (emphasis added).

The scope and nature of a foreclosure trustee's duties in Virginia are defined exclusively by the deed of trust, and no other duties are imposed on such "trustees." Indeed, "Virginia law provides that the trustee's duties are 'limited and defined by the instrument under which he acts.'" *Pham v. Bank of N.Y.*, 856 F. Supp. 2d 804, 811 (E.D. Va. 2012) (quoting *Sheppard v. BAC Home Loans Servicing, LP*, 2012 U.S. Dist. LEXIS 7654, 2012 WL 204288, *7 (W.D. Va. Jan. 24, 2012); *Sincere v. BAC Home Loans Servicing, L.P.*, 2011 U.S. Dist. LEXIS 149650 (W.D. Va. Dec. 30, 2011). As numerous courts have put it, the "<u>similarities between a trustee of an express trust and a trustee under a deed of trust end with the name. . . . [T]he trustee under a deed of trust does not have a true trustee's interest in, and control over, the trust property. Nor is it bound by the fiduciary duties that characterize a true trustee</u>." *Monterey SP Partnership v. WL Bangham*, 777 P.2d 623, 49 Cal.3d 454, 462-463 (1989) (emphasis added). Consistent with this pronouncement, Virginia courts also have repeatedly refused to impose duties on deed-of-trust trustees other than those specified in the deed of

trust. *See*, *e.g.*, *Sincere*, 2011 U.S. Dist. LEXIS at *23 (W.D. Va. Dec. 30, 2011) ("under Virginia law, '[t]he powers and duties of a trustee in a deed of trust . . . are limited and defined by the instrument under which he acts.' *Warner v. Clementson*, 254 Va. 356, 361, 492 S.E.2d 655, 657 (1997)").  Therefore, Virginia deed-of-trust trustees are not fiduciaries in the ordinary sense and are not bound by fiduciary duties.  *Sincere*, 2012 U.S. Dist. LEXIS at *23-24; *see also Sheppard*, 2012 U.S. Dist. LEXIS at *26; *Horvath v. Bank of New York, N.A.*, 2010 U.S. Dist. LEXIS 19965, 2010 WL 538039, at *1 (E.D. Va. Jan. 29, 2010), *aff'd*, 641 F.3d 617 (4th Cir. 2011) ("[u]nder Virginia law, . . . <u>a trustee under a deed of trust has no . . . duty of diligence, and trustees only owe duties listed in the deed of trust</u>") (emphasis added); *Carter v. Countrywide Home Loans, Inc.*, 2008 U.S. Dist. LEXIS 67014, 2008 WL 4167931, at *11 (E.D. Va. 2008); *Fleet Fin. v. Burke & Herbert Bank and Trust*, 27 Va. Cir. 98, 1992 WL 884461, at *3 (Va. Cir. Ct. 1992) (the "Court finds on this issue that <u>Virginia law does not impose fiduciary duties on trustees beyond those duties owed to the parties under the deed of trust</u>") (emphasis added).  Because Virginia foreclosure trustees are bound *solely* by the terms of the deed of trust under which they act, as numerous federal and state Virginia courts have held, such trustees are not true fiduciaries mentioned in § 92a.

The flip-side of the above is that ReconTrust does not and cannot derive its power to become a deed-of-trust trustee and engage in debt collection by foreclosure and other actions normally undertaken by such "trustees" by virtue of its permit from the OCC.  That permit only confers upon ReconTrust the power to engage in specified <u>banking</u> activities, such as "real estate lending powers."  To the extent that ReconTrust purports to engage in debt collection and similar activities as a deed-of-trust trustee, it does so as any other entity permitted to do so under the law, whether or not such entity is also a national bank.  ReconTrust is thus subject to all State and local laws governing such activities.

The Jaldins therefore ask the Court to hold that § 92a of the NBA does not preempt 55-58.1(2) because § 92a was intended to cover only fiduciary conduct of true fiduciaries, such as executors, guardians, etc., and was not intended to cover the conduct of deed-of-trust trustees, which are bound solely by the deed of trust and are not fiduciaries or "true trustees" under Virginia law.

**C.     There is no conflict preemption of § 55-58.1(2).**

Although the NBA does not cover deed-of-trust trustees, whose conduct has traditionally been within the purview of state law, for the sake of completeness the

-23-

Jaldins will also address and show that there is no conflict preemption[5] between the NBA and Va. Code § 55-58.1.

Section § 55-58.1(2) of Virginia Code provides:

No person not a resident of this Commonwealth may be named or act, in person or by agent or attorney, as the trustee of a security trust, either individually or as one of several trustees, the other or others of which are residents of this Commonwealth. No corporation may be named or act as the trustee or as one of the trustees of a security trust unless it is chartered under the laws of this Commonwealth or of the United States of America, and unless its principal office is within this Commonwealth.

This section undoubtedly governs appointment of deed-of-trust trustees and protects both borrowers and lenders by ensuring that a deed-of-trust trustee empowered to declare a default, proceed to sell the property, and engage in other acts authorized by the deed of trust and by Virginia foreclosure statutes (55-48 et seq.) is an entity that is "local" with respect to the property affected and the borrower. This section therefore does not address the business of banking, lending, or other activities that the NBA empowers national banks to do, such as making loans and taking deposits. Rather, § 55-58.1 covers areas of debt collection by foreclosure and acquisition and transfer of property – areas

---

[5] Since, as discussed *supra*, the NBA does not contain a "field preemption" clause, and since Congress did not intend to preempt Virginia's or any other state's foreclosure scheme, any potential preemption could arise only as "conflict preemption."

traditionally regulated by the States.  Because § 55-58.1 does not impose any

requirements on ReconTrust's banking and lending activities, it "only incidentally

affect[s] the exercise of national banks' real estate lending powers," 12 C.F.R. §

34.4(b).  Indeed, if this were not so, then BOA, as also a national bank, would not

need to comply with Virginia's nonjudicial foreclosure laws.  BOA would not need

to appoint a foreclosure trustee, would not need to ensure the trustee advertises the

property for sale as required by Virginia law, would not need to give notice to the

borrower that the sale will take place, and so on.  The bottom line is that acting as

a deed of trust trustee is not banking or lending, and ReconTrust, whether or not it

is a national bank, must comply with Virginia deed of trust and foreclosure laws

just like any other person or corporation.[6]

The OCC itself has confirmed that state foreclosure laws are generally *not*

within the scope of NBA preemption.  *See* Bank Activities and Operations; Real

Estate Lending and Appraisals, 69 Fed. Reg. 1904-01, at 1912 & n.59 (Jan. 23,

2004) (OCC final rule describing state foreclosure laws as generally among laws

---

[6] As a related point, preemption is also inappropriate here because it would *not* be preemption of Virginia law in favor of federal law, but preemption of Virginia law in favor of Texas law.  Preemption is generally *not* invoked to prefer the laws of one State over another.  As the *Bell* court noted after extensive review of the NBA's legislative history, "it is certain that Congress did not intend the laws of one State to pre-empt the laws of another State in dealing with a national bank." 2012 U.S. Dist. LEXIS at *33.

that "do not attempt to regulate the manner or content of national banks' real estate lending, but that instead form the legal infrastructure that makes it practicable to exercise a permissible Federal power").

As a statute regulating foreclosure and not making loans and taking deposits, Virginia's § 55-58.1 is clearly incidental to the NBA and § 92a, does not conflict with them, and is thus not subject to conflict preemption.

### III. ReconTrust breached the DOT because it did not comply with Section 55-58.1.

The Jaldins properly stated a claim for breach of contract against ReconTrust. With respect to the specific violation of the DOT in this case, the "DOT provides in ¶ 16 that "[a]ll rights and obligation contained in this Security Instrument are subject to any requirements and limitations of Applicable Law," including § 55-58.1. AC ¶ 17. Since ReconTrust does not satisfy the requirements of § 55-58.1, AC ¶ 27-28, ReconTrust is in breach of ¶ 16 of the DOT.

Defendants' argument that the Jaldins have failed to allege damages as a result of said breach is meritless. Defendants concede that the Jaldins alleged nominal damages. Nominal damages are sufficient to state a claim for breach of contract. *See*, *e.g.*, *Fairmount Glass Works v. Cub Fork Coal Co*, 287 U.S. 474 (1933). The Jaldins also alleged damages relating to their inability to have a face-

to-face meeting with the "trustee" and expenses in hiring consultants and other professionals to stop the unlawful foreclosure. As a matter of fact, the Jaldins *were* able to stop the contemplated September 11, 2012 unlawful foreclosure. As parties to the DOT, the Jaldins have an interest in and the right to that the DOT's provisions are executed as provided therein and in compliance with Virginia law. *Mathews*, supra, at *7. The Jaldins have also alleged damages, which include emotional distress, embarrassment, loss of enjoyment of life, expenses related to hiring professionals in an effort to stop an improper foreclosure from occurring, and nominal damages. The Jaldins' breach of contract claim against ReconTrust's violation of ¶ 16 of the DOT requiring compliance with § 55-58.1 thus should not have been dismissed.

### IV. BOA, ReconTrust, and Doe breached the terms of the DOT, so that Counts II, IV, and V should not have been dismissed.

The Jaldins contend that BOA (and unknown Defendant Doe, which may ultimately be Deutsche Bank) breached the DOT in two ways: (1) by failing to properly accelerate the loan and the power of sale never accrued, so that both BOA's pre-acceleration attempts, acceleration attempts and other foreclosure-related actions were in violation of the terms of the DOT; and (2) the pre-acceleration notice was not given by Lender or Lender's successor, as required by the DOT. AC ¶ 77-85.

**A.     The right to accelerate and the power of sale did not accrue under the terms of the DOT.**

The Amended Complaint alleged that the pre-acceleration notice was mailed on November 19, 2010, JA at 224, and this allegation is not contradicted by any relevant evidence, but on the contrary is supported by documents in the record. *See* JA at 61.  Thus, the breach of the pre-acceleration requirements and the resulting failure to accrue the power of sale have been properly alleged.  *Mathews*, *supra*, at *7-10; *see also Bayview Loan Servicing v. Simmons*, 654 S.E.2d 898, 275 Va. 114 (Va. 2008) (awarding damages of some $150,000.00 to borrower after a foreclosure sale in violation of pre-conditions in the deed of trust and without accrual of the power of sale).  The claims based on the failure of a condition (proper pre-acceleration notice under ¶ 22 of the DOT) and the failure to accrue the power of sale were properly stated.

The trial court opined that the Jaldins somehow have a duty to allege that they attempted to cure the breach within a certain period of time, that they were in fact unable to do so, etc.  This ruling is erroneous.  The deed of trust specifically contemplates a default and imposes certain conditions, including a proper pre-acceleration notice, precisely in the case of an existing default and without requiring that any alleged default be cured or attempted to be cured.  In fact, had a default been cured, there would no longer be any need and requirement for the

Lender's successor to send a pre-acceleration notice specifying a default and specifying a date (not less that 30 days after the notice is given) by which any alleged default must be cured. Quite simply, under the plain terms of the DOT, the power of sale given therein does not accrue unless and until a proper pre-acceleration notice is given, regardless of whether any alleged default is attempted to be cured. The Jaldins are a party to the DOT and have the right to insist that its conditions be fulfilled. And they have the right to insist that the conditions that are triggered upon default be fulfilled precisely when any alleged default exists as contemplated by the DOT itself. *Mathews*, *supra*. Such are the terms of the loan contract and they must be enforced.

At least one Virginia district court has declined to dismiss a breach of contract claim based on a lesser-than-30-day pre-acceleration notice. *See Belote v. Bank of Am., N.A.*, No. 3:12CV526-JRS, at *9 (E.D. Va. Dec. 18, 2012) (where the "notice letter provided only twenty-nine (29) days' notice," the "flaw in the notice letter [is] that the letter actually changes a substantive right by giving the borrowers 29 rather than 30 days in which to cure the defect"). The notice in the case at bar is even worse, as it curtailed the Jaldins' substantive right under the DOT to 27 days. Such a notice cannot result in accrual of the power of sale regardless of whether any alleged default was attempted to be cured.

The Jaldins therefore stated a valid claim for both declaratory judgment and breach of contract based on failure to give a proper pre-acceleration notice and failure to accrue power of sale.

**B.    The pre-acceleration notice was not given by Lender or its successor, in violation of the terms of the DOT.**

The DOT requires that any pre-acceleration notice be given to the borrower by "Lender" (Countrywide) or Lender's successor (assignee, owner of the loan). JA at 223.  The DOT also provides that a servicer is a different party that the loan owner, and that remedies under the DOT, including loan acceleration, are reserved to the loan owner and not the servicer.  *Id.*  The DOT is not alone in treating a servicer as different from the owner-assignee.  Federal law, particularly the Truth In Lending Act (TILA), also treats a servicer holding the note as different from the owner-assignee and provides that a "<u>servicer of a consumer obligation arising</u> <u>from a consumer credit transaction shall not be treated as an assignee of such</u> <u>obligation for purposes of this section unless the servicer is or was the owner of</u> <u>the obligation</u>."  15 U.S.C. § 1641(f)(1) (emphasis added).

The Amended Complaint alleged, whether or not the BOA is in physical possession of the Note (a fact that could not be established on a motion to dismiss), it was not acting on its own behalf, but was acting on behalf of an unknown principal.  JA at 226, 233-34 (¶¶ 34, 89, 91).  The identity of the

-30-

unknown principal may be HSBC Bank USA, N.A., *id.*, the Securitization Trustee for the Halo 2007-2 Trust under that trust's pooling and servicing agreement, *id.*, or another entity, *id.* One thing is clear: under the allegations of the Amended Complaint, the assignee and owner of the loan contract is *not* BOA, who is just a servicer, JA at 226, 233-34, and BOA has not overcome these allegations by any relevant and admissible evidence. Given that servicer is *not* treated as assignee or owner of the loan contract under both the DOT and federal law, BOA's claim of physical possession of the Note, even if it could be established (it could not on a motion to dismiss), does nothing to establish BOA's status as the owner-assignee of the loan contract to whom the right to exercise the remedies is reserved under the DOT. BOA remains the servicer for its principal John Doe, who is the owner of the obligation. Thus, based on the uncontroverted allegations of the Amended Complaint, given that the loan was sold to another party that is different from the servicer, the pre-acceleration notice was not given by "Lender's successor" as required by the DOT. Hence, the declaratory judgment and breach of contract claims based on this failure to comply with the DOT should have been allowed to proceed.

**V.      John Doe is liable for failing to disclose its name to the Jaldins directly (under §1641(g)) or through BOA (under §1641(f)(2)).**

The trial court dismissed the Jaldins' TILA claims under 1641(f)(2) & (g) on the grounds that "the defendants identified the master servicer and the owner of the note." JA at 335. This was error. The district court failed to perceive the difference between a holder of the note and the owner of the debt. See, e.g., *Bradford v. HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 346 n.10 (E.D. Va., 2011) ("under the Virginia Commercial Code, ownership of an interest such as the subject Note does 'not depend upon whether the instrument was transferred under Section 3–203.' Va.Code § 8.3A–203 cmt. 1"). Virginia's UCC thus clearly contemplates that these two entities can be different, as was the case here.[7]

The district court also ruled that TILA does not provide a private right of action for violations of § 1641(f). JA at 335. This again was error. Congress

----

[7] That Official Comments further elaborates:

> For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under section 3-203(a) until it is delivered to Y.

Va.Code § 8.3A–203 cmt. 1; *see also* 22 RICHARD A. LORD, WILLISTON ON CONTRACTS § 60:27 (4th ed.); *Bradford*, 829 F. Supp. 2d at 346 n.10.

-32-

amended TILA in 2009 to create a private right of action against creditors for a violation of Section 1641(f)(2). *See* 15 U.S.C. § 1640(a) (establishing liability of "any creditor who fails to comply with any requirement imposed under this part, including any requirement under [§§ 1641(f) or 1641(g)]"). This amendment was motivated both by Congress' general desire to provide a private right of action enforcing § 1641(f)(2) to "protect homeowners from harms associated with nondisclosures" and to alleviate concerns raised by an emblematic TILA case where a servicer's failure to reveal the identity of the current holder of a borrower's loan prevented the borrower from bringing a timely TILA rescission claim. *See*, *e.g.*, *Davis v. Greenpoint Mortg. Funding, Inc.*, No. 1:09-CV-2719-CC-LTW, 2011 WL 7070221, at *3 (N.D. Ga. Mar. 1, 2011), *adopted in part, rejected in part on other grounds*, 2011 WL 7070222 (N.D. Ga. Sept. 19, 2011). Because TILA does not contain any provisions allowing a consumer to bring a civil action against a servicer for a violation of Section 1641(f)(2), the Davis court observed "the private right of action that Section 1640(a) creates [against a creditor] would be meaningless, unless agency principles permitted a creditor to be held liable for Section 1641(f)(2) violations committed by its servicer." *Id.* at *4. Thus, "to avoid rendering Section 1640(a) superfluous," the Davis court concluded that "agency principles apply, and creditors may be held vicariously liable for the Section 1641(f)(2) violations of their servicers." *Id.* (citing *Consumer Solutions*

*Reo, LLC v. Hillery*, 2010 U.S. Dist. LEXIS 37857, at *9-17 (N.D. Cal. Mar. 24, 2010).     The trial court's decision completely ignores the language and effect of the 2009 TILA amendments, which bear directly on a creditor's liability under § 1641(f).  Morever, as among the courts have addressed this issue, the trend is towards recognizing creditor liability for servicer's violations of § 1641(f).  *Pjnegard-Guirma v. Bank of America, NA* , No. 3:10-cv-01065-PK (D. Or. Apr. 2, 2012); *see also Cenat v. U.S. Bank, N.A.*, No. 12-80663 (S.D. Fla. March 18, 2013); *Danier v. Fed. Nat'l Mortg. Ass'n*, No. 12-62354 (S.D. Fla. Feb. 7, 2013) *Khan v. Bank of N.Y. Mellon*, No. 12-60128, 2012 WL 1003509, at *2-6 (S.D. Fla. 2012) ("the Court is persuaded that Congress meant to extend agency principles to creditors or make creditors liable under § 1641(f)(2) by intentionally inserting the private right of action for violations of § 1641(f)(2) into § 1640(a), a remedy section that provides for civil liability against creditors"); *Kissinger v. Wells Fargo Bank, N.A.*, No. 12-60878 (S.D. Fla. Aug. 30, 2012); *Matza v. Countrywide Home Loans, Inc.*, No. 2:09-CV-217 (D. Nev. June 26, 2012); *Davis v. Greenpoint Mortg. Funding, Inc.*, No. 1:09-CV-2719-CC-LTW, 2011 WL 7070221 (N.D. Ga. Mar. 1, 2011), *adopted in part, rejected in part on other grounds*, 2011 WL 7070222 (N.D. Ga. Sept. 19, 2011).  Therefore, at a minimum, John Doe as a creditor is liable for its servicer BOA's violation in failing to disclose the identity of Doe as the owner of the debt by providing only the name of BOA, who could at

-34-

most be (if established) a mere note holder assigned the loan for administrative convenience, as contemplated by TILA's § 1641(f).

### VI.    BOA and ReconTrust violated the FDCPA.

The FDCPA prohibits, *inter alia*, "false, deceptive, or misleading representation or means in connection with the collection of any debt," which include the "false representation of . . . the character, amount, or legal status of any debt," "the threat to take any action that cannot legally be taken," and the "use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e.  The FDCPA also prohibits "unfair or unconscionable means to collect or attempt to collect any debt," which includes "[taking or threatening to take any nonjudicial action to effect dispossession . . . of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest."  15 U.S.C. § 1692f.

The Jaldins have alleged that ReconTrust and BOA have engaged in prohibited conduct.  JA at 235-36.  ReconTrust violated the FDCPA by threatening to take nonjudicial action where it, being an impermissible out-of-state foreclosure trustee and without the accrued power of sale, had no right to do so, as well as by falsely claiming that BOA was the owner of the debt.  JA at 236.  BOA violated the Act by using a sham third party that is its subsidiary (ReconTrust) to collect a debt, by misrepresenting the legal status of the debt in claiming to be the

-35-

debt owner, and by using a name other than its own (ReconTrust) to collect a debt. JA at 233-36. These allegations are matters of fact that give rise to a claim under the language of the FDCPA as quoted above, and therefore state a valid claim.

Further, ReconTrust is clearly a "debt collector," under the FDCPA, *see*, *e.g.*, *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373 (4ᵗʰ Cir. 2006); *Woodrow v. MacFaydyen*, 788 F. Supp. 2d 464 (E.D. Va. 2011). Similarly, BOA is also subject here to the FDCPA because cannot enjoy a "creditor exclusion" from being deemed a "debt collector" in this case. The "creditor exclusion" is specifically unavailable where a party "uses any name other than his own, which would indicate that a third person is collecting or attempting to collect a debt" and where a party "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4)&(6). Because BOA is alleged to satisfy either or both of these exclusions from the term "debt collector," JA at 235-36, it is subject to the FDCPA in this case.

Providing the name of servicer BOA (even if such party were to be established to be he holder of the note, which it was not) instead of the "creditor to whom the debt is owed" within the meaning of 15 U.S.C. § 1602(g) (defining "creditor") and within the meaning of Viginia's Commerial Code (as discussed *supra*) violated the FDCPA's requirement that the name of the "creditor to whom

-36-

the debt is owed" be disclosed.  For this reason, the Jaldins did properly state a

claim for violations of the FDCPA.

### VII.   The Jaldins properly alleged all the required elements of a "remove cloud on title" claim.

Appellants properly stated a remove cloud on title claim with respect to the

unlawful appointment of ReconTrust as a deed-of-trust trustee.  In particular, BOA

and ReconTrust argued below, and the district court agreed, that the Jaldins'

remove-cloud-on-title claim is somehow invalid because there is a lien recorded

with respect to the Property that "has not been forgiven or cancelled."  JA at 333-

34.  This stated basis for the district court's ruling is a "red herring."  The Jaldins'

challenge of the recorded appointment of ReconTrust as a substitute trustee has

nothing to do with the validity of the DOT pursuant to which the appointment was

attempted, but is based on the violation of Virginia law and the terms of the DOT.

AC ¶¶ 11-17, 27-28, 59-65.  Whether or not a valid lien exists, the Jaldins

currently remain record owners of the Property.  Moreover, any changes to the

trustee under the DOT must be made in accordance with the terms of the DOT, to

which the Jaldins are a party, and must be made under Virginia law, including §

55-58.1.

The recorded substitution of trustee does not comply with either Virginia

law or with the terms of the DOT, and therefore must be removed as clouding title

to the Property.  The substitution of trustee violates § 55-58.1 because it purports to appoint ReconTrust, an entity that indisputably does not meet the requirements of that section.  The purported appointment also violates the terms of the DOT (¶16) requiring compliance with § 55-58.1.  JA 52, 223-24.  Given that these violations are clearly alleged in the Complaint, JA 230-31, a remove-cloud claim has been validly stated.

The district court also ruled that the Jaldins had to assert superior title and that they failed to do so because of the valid lien.  JA 333-34.  This again is flawed.  Fist, the Jaldins have alleged superior title.  JA at 232.  The Jaldins do not challenge any deed of trust with respect to the Property, but challenge an appointment made pursuant to such a deed of trust and Virginia law.  The Jaldins are a party to the DOT and thus have the right to ensure that any acts of the parties to the DOT are done in compliance therewith.  *See*, *e.g.*, *Mathews v. PHH Mortgage Corp.*, 2012 Va. LEXIS 90, *7 (Va. Apr. 20, 2012) ("borrower is the only party with standing to bring an action, whether for damages after the fact of the improper sale or to bar the improper sale in equity before it occurs").[8]

---

[8]     Defendants' argument of "superior title" also fails because the "superior title" doctrine as set forth in *Maine v. Adams*, 227 Va. 230, 672 S.E.2d 862 (2009) applies to claims to "quiet title" rather than "remove cloud on title," which are two separate and distinct doctrines.  *See*, *e.g.*, 15 MICHIE'S JURISPRUDENCE, QUIETING TITLE § 2 (2012) (describing under the heading "Distinction Between Removing Cloud and Quieting Title" that "[e]quitable

Indeed, all the requisite elements of both a remove-cloud claim and a quiet-title claim are present in the Amended Complaint. The "only modern elements to the [quiet title] claim are that 1) the plaintiff has valid legal and equitable title, and 2) the defendant asserts some claim that constitutes a cloud on the plaintiff's title." *Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC*, 2011 U.S. Dist. LEXIS, *1 n.1 130335 (W.D. Va. 2011) (citing 15 MICHIE'S JURISPRUDENCE, QUIETING TITLE § 11). Here, the Amended Complaint alleged that the Jaldins have legal and equitable title to the Property (JA at 223), and that the recorded Deed of Appointment constitutes a claim (that ReconTrust as the purported substitute trustee holds legal title) clouding Plaintiff's title by virtue of having a trustee that is not qualified as such under Virginia law (JA 230-31). Nothing further need be alleged. *Quality Props.*, 2011 U.S. Dist. LEXIS at *1 & n.1. Count III of the Complaint was therefore sufficient to withstand a motion to dismiss both as a remove-cloud-upon-title claim and as a quiet-title claim.

---

jurisdiction may remove cloud for one in [mere] possession") (citing cases). In any event, this is not a contest of title between a property owner and a holder of an allegedly unpaid but valid lien. This is a request by one in possession to strike a claim by ReconTrust to being a new trustee in violation of both Virginia law and the terms of the DOT. The remove-cloud claim is therefore properly stated.

## CONCLUSION

The district court erred in dismissing the claims contained in the Amended Complaint. Each Count of the Amended Complaint properly states a claim for relief. The district court's order of dismissal should be reversed and all the claims reinstated. The case should be remanded to proceed on the claims set forth in the Amended Complaint.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs-Appellants do not request oral argument on this appeal.


Respectfully submitted,


_____*/s/ Gregory Bryl*_____
Gregory Bryl, Esq., VSB# 45225
BRYL LAW OFFICES
1629 K Street NW, Suite 300
Washington, DC 20006
202-360-4950
703-997-5925 fax
help@bryllaw.com
*Counsel for Plaintiffs-Appellants Roger and Janet Jaldin*

-40-

## CERTIFICATE OF COMPLIANCE

(Type-Volume Limitation, Typeface Requirements, and Type Style Requirements)

1. Appellants' Opening Brief complies with the type-volume limitation of FED.R. APP. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains <u>9,808 words</u> or less, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect 12 in 14-point Times New Roman font.

Date: June 17, 2013

_____ */s/ Gregory Bryl* _____
Gregory Bryl, Esq.

-41-

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2013, the foregoing Opening Brief of

Appellants was filed with the Court via hand delivery and electronically

using the CM/ECF system, which will then send a notification of such filing

(NEF)

to the following:

Joseph Patry, Esq.
BLANK ROME LLP
600 New Hampshire Ave NW
Washington, DC 20037
202-772-5940
jpatry@blankrome.com
*Counsel for Appellees*

_____*/s/ Gregory Bryl*_____
Gregory Bryl, Esq.