RECORD NO. 13-1214

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

ROGER JALDIN;
JANET JALDIN,

Plaintiffs-Appellants,

v.

RECONTRUST COMPANY, N.A.;
BANK OF AMERICA, N.A.;
JOHN DOE,

Defendants-Appellees.

On appeal from the United States District Court for the
Eastern District of Virginia, at Alexandria

———————————————

**APPELLEES RESPONSE BRIEF**
———————————————

Joseph Jason Patry
BLANK ROME LLP
600 New Hampshire Ave., NW
Washington, D.C. 20037
Telephone: (202) 772-5940
Facsimile: (202) 772-5858
jpatry@blankrome.com
apickard@blankrome.com

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1214__     Caption: _Roger Jaldin, et al. v. ReconTrust Company, N.A., et al.___

Pursuant to FRAP 26.1 and Local Rule 26.1,

_ReconTrust Company, N.A._____
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                              ☑ YES ☐ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
     ReconTrust Company, N.A. is 100% owned by Bank of America Corporation. Bank of America Corporation is a publicly-held corporation.

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                          ☑ YES ☐ NO
     If yes, identify all such owners:
     ReconTrust Company, N.A. is 100% owned by Bank of America Corporation. Bank of America Corporation is a publicly-held corporation, and no publicly-held corporation owns more than 10% of Bank of America Corporation.

- 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Joseph J. Patry                         Date:        3/1/2013

Counsel for: ReconTrust Company, N.A.

## CERTIFICATE OF SERVICE
*****************************

I certify that on _____3/1/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Joseph J. Patry                                 3/1/2013
      (signature)                                     (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  13-1214          Caption:  Roger Jaldin, et al. v. ReconTrust Company, N.A., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Bank of America, N.A.
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
          (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Bank of America, N.A. is the successor by merger to BAC Home Loans Servicing, L.P., and is 100% owned by BANA Holding Corp., which is 100% owned by BAC North America Holding Company.  BAC North America Holding Company is 100% owned by NB Holdings Corp., which is in turn 100% owned by Bank of America Corporation, whose shares are publicly traded.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☑ YES ☐ NO
      If yes, identify all such owners:
      No public company other than Bank of America Corporation has an ownership interest of 10% or more in Bank of America, N.A.  Bank of America Corporation does not have any parent corporations and no publicly-held company has an ownership interest of 10% or more in Bank of America Corporation.

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Joseph J. Patry                         Date:      3/1/2013

Counsel for: Bank of America, N.A.

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ 3/1/2013 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Joseph J. Patry                              3/1/2013
    (signature)                                   (date)

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ........................................................................ 1

STATEMENT OF THE ISSUES ........................................................................ 1

INTRODUCTION ........................................................................................ 2

STATEMENT OF THE CASE ......................................................................... 3

STATEMENT OF FACTS ............................................................................... 8

SUMMARY OF THE ARGUMENT ................................................................ 10

ARGUMENT ............................................................................................. 11

   I.     Standard of Review ........................................................................ 11

   II.    The Jaldins' Claims for a Declaratory Judgment and Injunctive Relief
         Based on ReconTrust's Appointment as Trustee Are Moot ..................... 11

   III.   Virginia Code Ann. § 55.58.1(2) Conflicts with the National Banking Act
         and is Preempted ........................................................................ 12

      A.   Virginia Code § 55.58.1(2) Favors Virginia-based Corporations over
           Non-Virginia Based Corporations and is therefore Pre-Empted by the
           NBA ...................................................................................... 13

      B.   Virginia Code Ann. § 55.58.1(2) Is Not a Foreclosure Statute ............... 19

      C.   Virginia Deed of Trust Trustees Have Fiduciary Duties and Are Covered
           Under the NBA ....................................................................... 20

      D.   A Foreclosure by a Non-Virginia Based Trustee is, at Most, a Technical
           Error ...................................................................................... 23

   IV.   The District Court Correctly Found that the Terms of the Deed of Trust
         Were Not Breached ..................................................................... 24

      A.   ReconTrust Did Not Breach the Terms of the Deed of Trust ................. 25

      B.   The Note Was Timely Accelerated ................................................. 26

i

## TABLE OF CONTENTS
### (continued)

<div align="right">Page</div>

V.    BANA Disclosed the Identity of the Note Owner ...................................... 33

   A.    BANA Appropriately Identified the Note Owner ..................................... 34

   B.    BANA Is Not Liable For a § 1641(f) Claim As a Servicer ..................... 35

   C.    The Jaldins Failed to Show They Are Entitled to Damages Under TILA37

VI.    BANA and ReconTrust Did not Make Any Deceptive Statements which Could Give Rise to an FDCPA Claim ....................................................... 39

   A.    ReconTrust was Authorized to Act as Trustee ......................................... 40

   B.    BANA Has the Right to Enforce the Note................................................. 40

   C.    The FDCA Does Not Apply to BANA...................................................... 40

VII.    The Jaldins Have Not Stated A Claim to "Remove Cloud on Title"........ 42

CONCLUSION ........................................................................................................ 44

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Trust Company, Inc., et al. v. South Carolina State Board of Bank Control, et al.,*
381 F.Supp. 313 (D. S.C. 1974).......................................................14, 15, 16, 17

*Barnett Bank, N.A. v. Nelson,*
517 U.S. 25 (1996)....................................................................... 13

*Basnight v. Diamond Developers, Inc.,*
146 F. Supp. 2d 754 (M.D.N.C. 2001).............................................. 37

*Bayview Loan Servicing, LLC v. Simmons,*
275 Va. 114 (2008)...................................................................... 27

*Bell v. Countrywide Bank, N.A.,*
860 F. Supp. 2d 1290, 2012 U.S. Dist. LEXIS 35530 (D. Utah, Mar. 15, 2012).............................................................................15, 17, 22

*Belote v. Bank of America,*
2012 WL 6608973 (E.D. Va. Dec. 18, 2012) .............................. 27, 28

*Blagogee v. Santander Consumer USA, Inc.,*
2011 U.S. Dist. LEXIS 155613 (E.D. Va. Nov. 29, 2011) *aff'd* 474 F. Appx. 366 (4th Cir. .................................................................... 41

*Borden v. Saxon Mortg. Servs., Inc.,*
No. 08-61851-CIV, 2010 WL 3834590 (S.D. Fla. Sep. 28, 2010)................... 36

*Bradford v. HSBC Mortg. Corp.,*
829 F. Supp. 2d 340 (E.D. ........................................................... 41

*Buzbee v. U.S. Bank, et al.,*
2012 Va. Cir. LEXIS 39 (2012) .................................................... 31

*Clark v. Fairbanks Capital Corp.,*
No. 00–C–7778, 2003 WL 21277126 (N.D.Ill. Jun. 2, 2003) .......................... 36

*Condel v. Bank of America, N.A.,*
2012 U.S. Dist. LEXIS 93206 (E.D. Va. July 5, 2012) ..................... 26, 30, 40

*Cox v. ReconTrust Co., N.A.*,
    2011 U.S. Dist. LEXIS 22157 (D. Utah Mar. 3, 2011) ............................... 15, 17

*Danier v. Fannie Mae*,
    2013 U.S. Dist. LEXIS 16701 (S.D. Fla. Feb. 7, 2013)...................................... 36

*Demetry v. Lasko Prods.*,
    284 Fed. Appx. 14, *15 (4th Cir.2008) .............................................................. 8

*Dutcher v. Matheson*,
    2012 U.S. Dist. LEXIS 16483 (D. Utah. Feb. 8, 2012) .................................... 16

*First Nat'l Bank v. Dickinson*,
    396 U.S. 122 (1969) ........................................................................................ 17

*First National Bank of Logan v. Walker Bank & Trust, Co.*,
    385 U.S. 252 (1967) ........................................................................................ 17

*Gale v. First Franklin Loan Servs.*,
    701 F.3d 1240 (9th Cir. 2012)......................................................................... 35

*Gold Country Lenders v. Smith* (In re Smith),
    289 F.3d 1155 (9th Cir. 2002)......................................................................... 38

*Gray v. Wittstadt Title & Escrow Co.,LLC*,
    2011 U.S. Dist. LEXIS 141830 (E.D. Va. Nov. 28, 2001), aff'd 475 Fed.
    Appx. 461 (4th Cir. Va. 2012) ....................................................................... 41

*H&R Block East Enters. v. Raskin*,
    591 F.3d 718 (4th Cir. 2010)...................................................................... 12, 13

*Haun v. Don Mealy Imps., Inc.*,
    285 F. Supp. 2d 1297 (M.D. Fla. 2003) ..................................................... 38, 39

*Holcomb v. Fed. Home Loan Mortg. Corp.*,
    No. 10-81186-CIV, 2011 WL 5080324 (S.D. Fla. Oct. 26, 2011) ................... 36

*Holland v. Chase Home Fin., LLC*,
    2011 U.S. Dist. LEXIS 102197 (E.D. Va. Sept. 9, 2011).................................. 40

*Horvath v. Bank of New York*,
    641 F.3d 617 (4th Cir. 2011)...................................................................... 31, 32

iv

*In re Trustee's Sale of the Property of Willie Brown et al.,*
    67 Va. Cir. 204 (2005) ................................................................ 23, 24

*Keiran v. Home Capital,*
    2013 U.S. App. LEXIS 14102 (8th Cir. Minn. July 12, 2013) ......................... 35

*Kelly v. Fairon & Assoc.,*
    CIV. No. 10-3228, 842 F. Supp.2d 1157, 2012 WL 361697 (D. Minn.
    Feb. 3, 2012) ........................................................................ 35

*Khan v. Bank of N.Y. Mellon,*
    849 F.Supp.2d 1377, 2012 WL 1003509 (S.D. Fla. Mar. 19, 2012) ................ 36

*Kittrell v. RRR, L.L.C.,*
    280 F. Supp. 2d 517 (E.D. Va. 2003) ................................................ 37

*Maine v. Adams,*
    277 Va. 230 (2009) ................................................................... 42

*McDonald v. Checks-N-Advance, Inc.* (In re Ferrell),
    539 F.3d 1186 (9th Cir. 2008) ....................................................... 38

*McInnis v. BAC Home Loan Servicing, LP,*
    2012 U.S. Dist. LEXIS 13653 (E.D. Va. Jan. 13, 2012), (Magistrate's
    report adopted February 3, 2012, 2012 U.S. Dist. LEXIS 13602, E.D. Va.
    February 3, 2012) ................................................................. 8, 32

*O'Dell v. Deutsche Bank Nat. Trust Co.,*
    2013 WL 2389874 (E.D. Va. May 30, 2013) ....................................... 34

*Ording v. BAC Home Loans Servicing, LP,*
    Civ. No. 10-10670, 2011 WL 99016 (D. Mass. Jan. 10, 2011) ..................... 36

*Patton v. Ocwen Loan Servicing, LLC,*
    2011 WL 1706889, No. 11-CIV-445 (M.D. Fla. May 5, 2011) ..................... 36

*Perrone v. GMAC,*
    232 F.3d 433 (5th Cir. 2000) ........................................................ 38

*Peters v. Jim Lupient Oldsmobile Co.,*
    220 F.3d 915 (8th Cir. 2000) ........................................................ 38

*Pham v. Bank of N.Y.,*
   856 F. Supp. 2d 804 (E.D. Va. 2012)............................................................. 32

*Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC,*
   2011 U.S. Dist. LEXIS 130335 (W.D. Va. Nov. 10, 2011)............................. 42

*Scott v. Wells Fargo Home Mortgage,*
   326 F. Supp. 2d 709 (E.D. Va. 2003)............................................................. 40

 *See eg., Jesse v. Wells Fargo Home Mortg.,*
   882 F. Supp. 2d 877, 2012 U.S. Dist. LEXIS 106073 (E.D. ........................... 41

*Selby v. Bank of Am., N.A.,*
   No. 09-CV-2079, 2011 WL 902182 (S.D. Cal. March 14, 2011) .................... 36

*Sheppard v. BAC Home Loan Servicing, LP,*
   2012 U.S. Dist. LEXIS 7654 (W.D. Va. Jan. 24, 2012) ...................................... 2

*Sherrell v. Bank of Am., N.A.,*
   No. CV F 11-1785, 2011 WL 6749765 (E.D. Cal. Dec. 22, 2011) .................. 36

*Smith v. Credico Industrial Loan Co.,*
   235 Va. 514 (1987).......................................................................................... 21

*Stump v. WMC Mortg. Corp.,*
   CIV.A. 02-326, 2005 WL 645238 (E.D. Pa. Mar. 16 2005)............................ 36

*Sunrise Continuing Care, LLC v. Wright,*
   277 Va. 148 (2009).......................................................................................... 25

*Turner v. Beneficial Corp.,*
   242 F.3d 1023 (11th Cir. 2001)...................................................................... 37

*U.S. v. Petroff-Kline,*
   557 F.3d 285 (6th Cir. 2009).......................................................................... 37

*Vallies v. Sky Bank,*
   591 F.3d 152 (3d Cir. Pa. 2009)..................................................................... 37

*Valrie v. Nationstar Mortgage, LLC,*
   900 F. Supp. 2d 1294 (S.D. Ala. 2012)........................................................... 36

*Virginia Hous. Dev. Auth. v. Fox Run Ltd. Pship*,
255 Va. 356, 497 S.E.2d 747 (1998) ................................................ 28

*Wood v. MorEquity, Inc.*,
331 F. Appx 243 (4th Cir. 2009) ................................................ 29

*Yaffe v. Heritage Savings & Loan Asso.*,
234 Va. 577 (1988) ................................................ 21

**STATUTES**

12 U.S.C. § 92a ................................................ 17, 18, 19, 22

12 U.S.C. §92a(a) ................................................ 16

12 U.S.C. § 92a(b) ................................................ 16

12 U.S.C. § 2605(i)(2) ................................................ 35

15 U.S.C. § 1640(a)(1) ................................................ 37

15 U.S.C. § 1641(f) ................................................ 35, 36

15 U.S.C. § 1641(f)(2) ................................................ passim

15 U.S.C § 1641(g) ................................................ 34

15 U.S.C. § 1692e ................................................ 39

Utah Code 57-1-2 ................................................ 15

Va. Code Ann. § 6.2-1000(A)(4) ................................................ 21

Va. Code Ann. § 6.2-1083(A) ................................................ 21

Va. Code Ann. § 6.2-1083(A)(4) ................................................ 21

Va. Code Ann. § 55.58.1(2) ................................................ passim

Va. Code Ann. § 55.58.1(2), Section 92a ................................................ 14

Va. Code Ann. § 55-59.2 (2) ................................................ 20

Va. Code Ann. § 55-59.3 ................................................ 40

Va. Code Ann. § 55-59.3, and (3) ........................................................ 20

Va. Code Ann. § 55-59.4 .................................................................... 20

Va. Code Ann. § 64.2-1423 ................................................................. 21

Va. Code § 8.3A-205(b) ...................................................................... 32

Va. Code. 8.3A-301 ............................................................................ 32

Va. Code § 55-59.4B ........................................................................... 12

**OTHER AUTHORITIES**

12 C.F.R. § 34.4 .................................................................................. 18

12 C.F.R. § 34.4(a) ............................................................................. 17

Rule 28(d) of the Federal Rules of Appellate Procedure .......................... 1

## JURISDICTIONAL STATEMENT

BANA Defendants[1] do not contest the Jaldins' jurisdictional statement.

## STATEMENT OF THE ISSUES

(1) Whether a Virginia statute that allows banks based in Virginia to be named as a trustee on a Virginia Deed of Trust, but prohibits non-Virginia based national banks from serving in the same role, impermissibly gives Virginia-based banks a competitive advantage over national banks and thus is pre-empted under the National Banking Act.

(2) Whether BANA Defendants breached the terms of Mr. Jaldin's Deed of Trust when one of two debt acceleration notices was sent with only twenty seven days notice to cure a default (as opposed to thirty days), where the Jaldins received both notices and do not challenge the timeliness of the second notice.

(3) Whether BANA, Mr. Jaldin's mortgage servicer, has the authority to accelerate his loan.

(4) Whether disclosing the name of the trust which owns Mr. Jaldin's mortgage loan complied with 15 U.S.C. § 1641(f)(2), a provision of the Truth In

---

[1] Pursuant to Rule 28(d) of the Federal Rules of Appellate Procedure, Appellants Roger and Janet Jaldin shall be referred to as Jaldin or the Jaldins. Appellees Bank of America, N.A. ("BANA") and ReconTrust Company, N.A. shall be referred to as BANA Defendants or, depending on the context, BANA or ReconTrust.

Lending Act that allows borrowers to request the identity of the owner of the their loan.

## **INTRODUCTION**

Mr. Jaldin borrowed $700,000 from Countrywide Home Loans, Inc. in May 2007.[2] *See* Promissory Note, JA at 94-96.  He executed a Promissory Note (the "Note") which was secured by a Deed of Trust (the "Deed of Trust") encumbering property at 7370 Kincheloe Road, Clifton, VA 20124 (the "Property"), and agreed to make monthly payments of $5,015.02. *See* JA at 94, 44.

BAC Home Loans Servicing, LP, BANA's predecessor in interest,[3] accelerated Mr. Jaldin's loan in November 2010 because he defaulted.  *See* Notice of Intent to Accelerate, JA at 59. The Jaldins remain in the Property and have made no payments on their Deed of Trust since approximately September 2010.  *See* Transcript of Hearing on Motion to Dismiss Plaintiff's First Amended Complaint, JA at 330.[4]

---

[2] Only Mr. Jaldin executed the note and Deed of Trust, *See* JA at 95, 55.  However, the First Amended Complaint alleges that Ms. Jaldin has an interest in the property as a title holder.  *JA* at 223.  BANA Defendants have not contested that allegation.

[3] *See Sheppard v. BAC Home Loan Servicing, LP,* 2012 U.S. Dist. LEXIS 7654, *2 (W.D. Va. Jan. 24, 2012).

[4] The District Court made this finding at the hearing on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.  *See* JA at 330.  Although the Opening Brief refers to an "Alleged Default," *see* Opening Brief at 6, the Jaldins

2

Despite having nearly two years to attempt to cure Mr. Jaldin's default, the Jaldins filed this lawsuit to prevent BANA Defendants from enforcing the terms of the Note and Deed of Trust which Mr. Jaldin signed. They claim that ReconTrust and BANA do not have the authority to accelerate Mr. Jaldin's loan and foreclose, even though ReconTrust is authorized to foreclose as the substitute trustee of Mr. Jaldin's Deed of Trust and BANA has the right to enforce the loan as the loan servicer and note holder. Mr. Jaldin acknowledges that BANA has the right to collect his payments but argues that BANA does not have the right to enforce his loan, a position contradicted by the Deed of Trust he signed. The District Court correctly dismissed these claims and should be affirmed.

## STATEMENT OF THE CASE

The Jaldins filed this lawsuit to prevent a foreclosure based on an allegation that ReconTrust was not properly appointed as a trustee under Va. Code Ann. § 55.58.1(2)[5] and that BANA Defendants did not properly accelerate their loan. *See* Complaint, JA at 20-28.

---

do not specifically challenge the District Court's finding and do not allege that they have either cured or attempted to cure the default.

[5] This provision states that only a Virginia corporation may be appointed as the trustee on a Virginia Deed of Trust. This Code provision will be discussed in detail below.

BANA Defendants removed the case to the United States District Court for the Eastern District of Virginia based on federal question jurisdiction. *See* Notice of Removal, JA at 8-9. On October 10, 2012, BANA Defendants moved to dismiss the Jaldin's Complaint, arguing (1) the case was moot because the sale had been cancelled, (2) Va. Code Ann. § 55.58.1(2) is pre-empted under federal law, and (3) BANA, as the loan servicer and note holder, had the right to accelerate Mr. Jaldin's loan. *See* Memorandum and Points of Authorities in Support of Defendants' Motion to Dismiss, JA at 73.

The District Court heard oral argument on Defendants' Motion on November 9, 2012 and dismissed the entire complaint. *See* JA at 220. The court found that the Jaldins' claim that ReconTrust was not a proper trustee was moot or premature because the sale had not yet occurred, and that the validity of any future foreclosure would be determined based on the facts of that future foreclosure. *See* JA at 213. Regarding BANA Defendants' argument that the breach of contract claim for failure to properly accelerate the loan should be dismissed, the District Court found that the Jaldins had failed to plead sufficient facts that BANA Defendants did not have authority to act. *Id.* at 215. The court also found that the Jaldins had failed to set forth that any breach of the notice provision was material. *Id.* Ruling on the remainder of the claims, the District Court found that the Jaldins had failed to state a claim upon which relief could be granted. *Id.* at 214-217.

4

The Jaldins then filed their First Amended Complaint on November 23, 2012, *see* JA at 221. The Jaldins' claims in the First Amended Complaint were nearly identical to those filed in the original Complaint, with only slight deviation, *i.e.*, Count I of the First Amended Complaint includes an additional allegation that ReconTrust was not authorized to act as trustee because it is a BANA subsidiary. *See* JA at 228. The Jaldins added several facts to their claim under 15 U.S.C. § 1641(f)(2) regarding the ownership of the securitized trust that owns the Note. *See* JA at 235-238. However, other than the inclusion of a largely conclusory claim for fraud, *see* JA 239-240, there are few substantive differences between two pleadings.

In their First Amended Complaint the Jaldins make three claims, all of which the District Court correctly dismissed upon the BANA Defendants' subsequent motion to dismiss: (1) ReconTrust, a national banking association which is not based in Virginia, was not properly appointed as the trustee on Mr. Jaldin's Deed of Trust because Va. Code Ann. § 55.58.1(2) allows only Virginia-based corporations or corporations chartered under the laws of the United States but which have their principal place of business in Virginia to be appointed as trustees on a Virginia Deed of Trust; (2) the November 2010 acceleration notice breached the terms of the Deed of Trust because it allowed Mr. Jaldin only twenty seven days to cure a default when the Deed of Trust required thirty days notice,

5

and (3) BANA, as the loan servicer, did not have the authority to accelerate the loan.   BANA Defendants filed another motion to dismiss on December 14, 2012, and largely made the same points which they argued in the motion to dismiss the first complaint.  *See* Memorandum and Points of Authorities in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, JA at 244.

Oral argument on the second Motion to Dismiss was held on January 18, 2013 and the District Court granted BANA Defendants' motion to dismiss the Amended Complaint on January 18, 2013.  *See* JA at 338.

Regarding Va. Code Ann. § 55.58.1(2), the court found that Va. Code Ann. § 55.58.1(2) is pre-empted:

> … ReconTrust was authorized by applicable law to act as a substitute trustee and, therefore, as a foreclosure trustee since a state charted bank would have been authorized to so act.  The Court basis this conclusion on the National Banking Act, which authorizes a national bank, such as ReconTurst, to do whatever a state chartered bank may do.  A state charted bank may act as a trustee, and a national bank may, therefore, act as a trustee.
>
> To the extent ReconTrust is not authorized to act as a trustee under Virginia law because it is a nonresident, which is not at all clear to the Court, in any event, federal law would preempt that Virginia law. …

JA at 332.

The court then addressed the breach of contract claim:

> … [A]s discussed above, a foreclosure still has not occurred, and for that reason, any failure to designate a date in the letters sent to

6

the plaintiffs that allowed for a full 30 days to cure after receiving the letter as not a material breach or defect. In this regard, the Virginia Supreme Court has made it clear in Virginia Housing Development Authority v. Fox Run Ltd. P'Ship, 255 Va. at 366, a 1998 decision, that substantial compliance with notice requirements is sufficient so long as the parties' rights are not affected in any material way.

Here the plaintiffs have had over two years to cure the default, and their rights have not been materially affected as a matter of law because of the date included in the letters sent to them.

Finally, as discussed above, the Bank of America has the authority to appoint a successor trustee under the deed of trust. It was the lender as well as the servicer, and for these reasons, the plaintiff is not entitled to relief as a matter of law based on Count 2.

*See* JA at 333.

In ruling on the other counts in the First Amended Complaint, the court found that BANA had no liability for the Jaldins' TILA claims:

With respect to Counts 6 and 7 alleging violations of the Truth in Lending Act, courts require that consumers show detrimental reliance on an incomplete or inaccurate disclosure in order to obtain actual damages under TILA. In other wors, the plaintiffs must allege facts that, if proven, would constitute actual damages. Here the plaintiffs have not identified any cognizable injury as a result of the alleged TILA violations. Section 1641(f)(2) requires the [sic] upon request from the borrower, loan servicers provide information regarding the owner of the obligation or master servicer of the obligation. At various points, the defendants identified the master servicer and owner of the note. The record before the Court indicates that the information that was provided was not, in fact, false.

More importantly, the amended complaint alleges that Bank of America is the servicer on the loan only, and the vast majority of

7

> courts have held that TILA does not provide a private cause of
> action against servicers for a violation of Section 1641(f).

JA at 335.

The court addressed the remaining counts and dismissed the complaint in its
entirety, without leave to amend. *See* JA at 337. The Jaldins then filed the instant
appeal. *See* JA at 339.

## STATEMENT OF FACTS

On May 9, 2007, Roger Jaldin executed the Deed of Trust in favor of
Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, on
behalf of original lender Countrywide Home Loans, Inc., its successors and
assigns. *See* JA at 44. The Deed of Trust secures a promissory Note which Mr.
Jaldin signed in the amount of $700,000. *See* JA at 94.[6] Paragraph 1 of the Note
specifies that the Lender may transfer the Note and anyone who takes the Note by
Transfer and who is entitled to receive payments under the Note is the Note
Holder. *Id.* The Note is endorsed in blank and the original is in the possession of

---

[6] Although not attached to Plaintiff's complaint, the court may consider documents
referenced in Plaintiff's complaint which are pertinent to the claims, without
converting the motion to dismiss into a motion for summary judgment. *McInnis v.
BAC Home Loan Servicing, LP*, 2012 U.S. Dist. LEXIS 13653, *18, Fn. 7 (E.D.
Va. Jan. 13, 2012), (Magistrate's report adopted February 3, 2012, 2012 U.S. Dist.
LEXIS 13602, E.D. Va. February 3, 2012); *Demetry v. Lasko Prods.*, 284 Fed.
Appx. 14, *15 (4th Cir. 2008).

BANA.  *See* Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, JA at 245.

BANA is the current servicer of Mr. Jaldin's mortgage loan.  *See* First Amended Complaint, JA at 210.  BANA sent Roger Jaldin a letter dated November 15, 2010 entitled "Notice of Intent to Accelerate" which required him to cure the default on or before December 16, 2010.  *See* JA at 59.  The November 2010 Notice of Intent to Accelerate states that Mr. Jaldin's account was past due in the amount of $11,927.98.  *Id.*  The Jaldins allege that this Notice of Intent to Accelerate was not received until November 22, 2010.  *See* First Amended Complaint, JA at 224.

On October 26, 2011, BANA executed a Substitution of Trustee, which appointed ReconTrust and ALG Trustee as successor trustees under the Deed of Trust.  *See* JA at 97.  ALG Trustee is a Virginia LLC.[7]  The Jaldins received a second notice of intent to accelerate in October 2011.  *See* First Amended Complaint, JA at 225.  In 2011 and 2012, the Jaldins received several notices indicating that a trustee's sale was scheduled.  *See* First Amended Complaint, JA at 225-226. The sales were subsequently cancelled and no sale is pending.  *See*

---

[7] *See, Records of the Virginia State Corporation Commission,*
https://sccefile.scc.virginia.gov/Business/S297543 (last accessed July 3, 2013).

Transcript of Hearing on Motion to Dismiss Plaintiff's First Amended Complaint, JA at 330.

## **SUMMARY OF THE ARGUMENT**

This Court should affirm the District Court's dismissal of the First Amended Complaint because:

1. the Virginia statute which prohibits ReconTrust from acting as a substitute trustee is pre-empted since it impermissibly favors Virginia-based banks over national banks not based in Virginia;

2. BANA Defendants accelerated Mr. Jaldin's note twice while the First Amended Complaint makes no allegations regarding the timeliness of the second acceleration[8] -- thus, the BANA Defendants materially complied with the terms of the Deed of Trust; and

3. BANA, as Mr. Jaldin's loan servicer, is responsible for administering the loan and for accepting payments, to which Mr. Jaldin agreed to when he signed the Deed of Trust. BANA also holds the note which Mr. Jaldin executed. As a result, BANA has the right to accelerate the note and enforce the Deed of Trust.

---

[8] The Jaldins' counsel did assert at oral argument on the motion to dismiss the First Amended Complaint that the second notice was not timely. *See* Transcript of Hearing on Motion to Dismiss Plaintiff's First Amended Complaint, JA at 324, however, the First Amended Complaint contains no such allegation.

The Jaldins also brought claims under the Truth In Lending Act (based on an alleged failure to identify the owner of their promissory note) and the Fair Debt Collection Practices Act (based on the alleged inability of ReconTrust to be named as trustee and BANA's inability to accelerate the loan). The District Court also correctly dismissed these claims since (i) the BANA Defendants did identify the owner of the loan, (ii) ReconTrust had the authority to act as trustee, and (iii) BANA Defendants made no false statements to the Jaldins.[9]

## ARGUMENT

### I.    Standard of Review

BANA Defendants agree with the Jaldins' contention that the applicable standard of review is *de novo*.

### II.   The Jaldins' Claims for a Declaratory Judgment and Injunctive Relief Based on ReconTrust's Appointment as Trustee Are Moot

In the First Amended Complaint, the Jaldins seek a declaratory judgment that ReconTrust is not qualified to act as a foreclosure trustee. *See* JA at 227. However, there is no actual controversy because the foreclosure sale has been cancelled. Thus, ReconTrust is not acting as a foreclosure trustee at the present time. The sale was re-scheduled for January 8, 2013 but has subsequently been

---

[9] The Amended Complaint also included a count for actual and constructive fraud against ReconTrust and BANA. *See* JA at 239. The Opening Brief does not address the dismissal of the Jaldins' fraud claim thus it appears that the Jaldins have abandoned any appeal of the denial of this claim.

cancelled and no sale is currently scheduled.  Although ReconTrust remains a

trustee of record, a party who has been appointed as a Substitute Trustee is not

automatically a trustee for the purposes of foreclosure.  A trustee may be appointed

for reasons other than foreclosure, such as executing a deed of release.  *See* Va.

Code § 55-59.4B.  Because there is no actual controversy relating to ReconTrust's

ability to act as a foreclosure trustee, the District Court was correct to find in its

ruling on the motion to dismiss the original complaint that the claims based on

ReconTrust's authority to be appointed as trustee are moot.  *See* JA at 213.

## III.  Virginia Code Ann. § 55.58.1(2) Conflicts with the National Banking Act[10] and is Preempted

Assuming *arguendo* that the Jaldins' claims regarding the appointment of

ReconTrust as substitute trustee are not moot, the provision which the Jaldins rely

on is pre-empted.

The Jaldins contend that Va. Code Ann. § 55.58.1(2) prohibits ReconTrust

from being appointed as the trustee on a Virginia Deed of Trust.  However, this

provision conflicts with Federal law, and is thereby pre-empted.  In particular,

Federal law may preempt state law in three ways: (1) express preemption, (2) field

preemption, and (3) conflict preemption.  *H&R Block East Enters. v. Raskin*, 591

F.3d 718, 722-23 (4th Cir. 2010).  Express preemption occurs when Congress has

---

[10] All references to the National Banking Act ("NBA") are to 12 U.S.C. § 92a unless otherwise indicated.

12

expressed an intent to preempt state law. Field preemption occurs when Congress has clearly intended to occupy an entire field of regulation. *Id.* Conflict preemption occurs when a state law actually conflicts with federal law. *Id.* (quoting *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007)).

As discussed in detail below, Va. Code Ann. § 55.58.1(2) falls within the third category because it conflicts with federal law as it attempts to prevent national banks from exercising the same powers granted to state banks, which is prohibited under the National Banking Act, ( the "NBA").[11]

### A. Virginia Code § 55.58.1(2) Favors Virginia-based Corporations over Non-Virginia Based Corporations and is therefore Pre-Empted by the NBA

Virginia law prevents out-of-state corporations from acting as trustees on a Virginia Deed of Trust unless the corporation's principal office is within Virginia. Specifically, Virginia Code Ann. § 55.58.1(2) provides:

> No person not a resident of this Commonwealth may be named or act, in person or by agent or attorney, as the trustee of a security trust, either individually or as one of several trustees, the other or others of which are residents of this Commonwealth. No corporation may be named or act as the trustee or as one of the trustees of a security trust unless it is chartered under the laws of

_____

[11] The Jaldins note that there is a presumption against pre-emption in fields traditionally regulated by the states. *Opening Brief* at 14. However, when state law attempts to limit powers granted to national banks, the state law is ordinarily pre-empted. *Barnett Bank, N.A. v. Nelson*, 517 U.S. 25, 32 (1996). Because Va. Code Ann. §55.58.1(2) attempts to limit the powers granted to national banks, the presumption against pre-emption does not apply. *Cf. id.*

this Commonwealth or of the United States of America, and unless its principal office is within this Commonwealth.

Thus, under Va. Code Ann. § 55.58.1(2), a bank chartered in Virginia or a national bank with its principal place of business in Virginia may be appointed to serve as a deed of trust trustee. However, a non-Virginia based national bank may not be appointed as a deed of trust trustee.

In contrast to Va. Code Ann. § 55.58.1(2), Section 92a of the NBA allows National Banks to exercise the ***same powers*** which states give to their own state banks:

> (a) Authority of Comptroller of the Currency. The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

> (b) Grant and exercise of powers deemed not in contravention of State or local law. **Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks *shall not be deemed to be in contravention of State or local law*** within the meaning of this Act. 12 U.S.C. § 92a (emphasis added).

14

National banks can only exercise authority given to them by Congress. *American Trust Company, Inc. v. South Carolina State Board of Bank Control*, 381 F.Supp. 313, 322 (D. S.C. 1974). Federal law only authorizes a national bank to act as a fiduciary when state law allows a national bank to do so. *Id.* However, "…a national bank does not act in contravention of state or local law if a competing state bank can serve as a fiduciary. In this event, the national bank's authority is coextensive with the state bank's, but it is not enlarged." *Id.*

Congress's intent in enacting the NBA was to ensure that state institutions do not have a competitive advantage over national banks. *Id.*; *Bell v. Countrywide Bank, N.A.*, 860 F. Supp. 2d 1290, 1303, 2012 U.S. Dist. LEXIS 35530, *31 (D. Utah, Mar. 15, 2012).[12] The NBA requires that national banks must have the same powers which states grant to their own state banks. *Cox v. ReconTrust, N.A.*,

---

[12] Utah cases are discussed here because the issue of whether ReconTrust may act as a trustee in Utah has been litigated extensively in Utah. *See Bell*, 860 F. Supp. 2d at 1293, 2012 U.S. Dist. LEXIS 35530, *4-*5. In *Bell*, the court found that the Utah provision was not pre-empted. *See id.* at *17. Notably, however, *Bell* concerned a provision of Utah law, Utah Code 57-1-2, that is somewhat similar to the Virginia statute at issue here – but with a critical difference. *Cf. Cox v. ReconTrust Co., N.A.,* 2011 U.S. Dist. LEXIS 22157, *8 (D. Utah Mar. 3, 2011); Va. Code § 55.58.1(2). Specifically, the Utah Code provision limits the entities which are able to act as foreclosure trustees to Utah attorneys or Utah title companies. The Utah statute thereby prohibits **both** Utah banks and national banks from acting as a foreclosure trustee. In contrast, the Virginia statute allows Virginia banks to act as trustees, but prohibits national banks from doing the same. Thus, although the analysis in *Bell* is helpful to analyze the effect of the NBA on Va. Code Ann. § 55.58.1(2), the holding is distinguishable due to the key differences between the state statutes.

15

2011 U.S. Dist. LEXIS 22157, *12-13 (D. Utah. Mar. 3, 2011). If a state allows its own banks to have trustee powers, then national banks must have the same powers. *American Trust Company, Inc.*, 381 F.Supp. at 323; *Cox*, 2011 U.S. Dist. LEXIS 22157, *12-13. If state law prohibits national banks from exercising powers which are granted to state banks, national banks are entitled to exercise those same powers, even if state law expressly prohibits them from doing so. *Dutcher v. Matheson*, 2012 U.S. Dist. LEXIS 16483, * 20 (D. Utah. Feb. 8, 2012), 12 U.S.C. § 92a(b); *American Trust Company, Inc.*, 381 F.Supp. at 323.[13]

Virginia Code Ann. § 55.58.1(2) is pre-empted because its prohibition against national banks acting as a deed of trust trustee directly conflicts with the NBA's requirement that the laws of Virginia grant national banks the same powers as State banks. The NBA allows national banks to exercise fiduciary powers. 12 U.S.C. §92a(a). ReconTrust has been authorized as a national bank by the Office of the Comptroller of the Currency (the "OCC"). *See* JA at 101. The OCC granted

---

[13] The Jaldins argue that this Court would be required to find pre-emption of Virginia law in favor of Texas law. *See Opening Brief at* 25. However, because ReconTrust is recognized as a national bank exercising fiduciary powers, *Dutcher*, 2012 U.S. Dist. LEXIS 16483 at *2, this Court need only look to Virginia law to determine if Virginia state banks are competing with national banks. *See, e.g., Dutcher*, 2012 U.S. Dist. LEXIS 16483 at *19 (finding that although the court believed that because ReconTrust was authorized to act as a trustee in Texas under the NBA it was required to be allowed to act as a trustee in Utah. Thus, the court found that ReconTrust was still authorized to act as a trustee in Utah even applying Utah law because of the non-competition clause of the NBA.).

fiduciary powers to ReconTrust. *Dutcher*, 2012 U.S. Dist. LEXIS 16483 at *2.

Nevertheless, Va. Code Ann. § 55.58.1(2) prohibits ReconTrust from serving as a

trustee on a Virginia Deed of Trust. Meanwhile, Virginia banks and other national

banks with their principal place of business in Virginia may be appointed as a

trustee on a Virginia Deed of Trust. As a result, ReconTrust is placed at a

competitive disadvantage with its Virginia-based counterparts which offer trustee

services.

Virginia law cannot favor Virginia-based banks over non-Virginia based

national banks. *Cf. American Trust Company, Inc.,* 381 F.Supp. at 323. *Cox v.

ReconTrust Co, N.A.,* 2011 U.S. Dist. LEXIS 22157, *12-13 (D. Ut. Mar. 3, 2011.

Competitive equality is the concept that state and national banks are to compete

against each other in the same state on the same or equal footing. *See, e.g., First

Nat'l Bank v. Dickinson*, 396 U.S. 122, 133 (1969); *First Nat'l Bank v. Walker

Bank & Trust, Co.*, 385 U.S. 252, 261 (1966). Va. Code Ann. § 55-58.1(2)

conflicts with the "competitive equality" Congress intended between national and

local banks when it enacted 12 U.S.C. § 92a, *cf. American Trust Company, Inc.*

381 F.Supp. at 323. As the *Bell* court noted, Congress, "…intended to create an

equal playing field for national banks, and was wary of any potential competitive

advantage afforded to State institutions by State law." 2012 U.S. Dist. LEXIS

17

35530 at *31.  Because Va. Code Ann. § 55.58.1(2) affords Virginia-based banks a competitive advantage over national banks, it is pre-empted.

The Jaldins cite to 12 C.F.R. § 34.4(a) to support their argument that regulations relating to debt collection and the acquisition and transfer of real property are not pre-empted.  *Opening Brief* at 16.  However, these regulations interpret a national bank's ability to make real estate loans.  *See* 12 C.F.R. § 34.4.  BANA Defendants are not arguing that Virginia cannot regulate debt collection and the transfer of real property.  Rather, ReconTrust seeks to exercise the powers it has been granted by the OCC under 12 U.S.C. § 92a – to act as a fiduciary.

The OCC regulations which have interpreted 12 U.S.C. § 92a support this conclusion.  For example, in 1995, the OCC issued an Interpretive Letter which considered the effect of 12 U.S.C. § 92a on state laws that distinguish between state banks and national banks:

> …[T]he effect of section 92a is that in any specific state, the availability of fiduciary powers is the same for out-of-state national banks or for in-state national banks and is dependent upon what the state permits for its own state institutions. **A state may limit national banks from exercising any or all fiduciary powers in that state, but only if it also bars its own institutions from exercising the same powers.** Therefore, a national bank with its main office in one state (such as the proposed Trust Bank) may conduct fiduciary business in that state and other states, depending upon -- with respect to each state -- whether each state allows its own institutions to engage in fiduciary business.

OCC Interpretive Letter No. 695, 1995 WL 788827, 4-5 (emphasis added).

18

Likewise in 2008, the OCC considered whether a North Carolina statute that placed certain requirements on out-of-state banks seeking to exercise fiduciary powers was pre-empted under 12 U.S.C. § 92a and concluded that such restrictions are pre-empted:

> North Carolina law purports to require an out-of-state national bank to obtain a certificate of authority from the North Carolina Secretary of State; submit annual reports to keep the certificate current; notify and receive approval from the Commissioner of Banks before engaging in fiduciary activities in North Carolina; and obtain a state license. These requirements would clearly limit or precondition the exercise of the Bank's federally authorized fiduciary powers. The North Carolina law imposing these requirements is preempted for national banks with fiduciary powers because the requirements directly conflict with the powers of national banks to act in a fiduciary capacity granted under federal law by section 92a and the OCC's regulations.

*See* OCC Interpretive Letter # 1103, 2008 WL 7448056, *2.

The OCC's interpretation of 12 U.S.C. § 92a supports BANA Defendants' position because the OCC recognizes that a state very well may prevent banks from exercising fiduciary powers. However, a state cannot allow its own banks to exercise fiduciary powers while prohibiting national banks from using those same powers – this is exactly what Va Code Ann. § 55.58.1(2) attempts to do.

## B.    Virginia Code Ann. § 55.58.1(2) Is Not a Foreclosure Statute

The Jaldins assert that BANA Defendants, by arguing that Virginia Code Ann. § 55.58.1(2) is pre-empted by Federal law, seek to invalidate Virginia's laws

19

governing foreclosure. *Opening Brief* at 25. BANA Defendants make no such argument.

Va. Code Ann. § 55.58.1(2) is not a foreclosure statute. It merely governs which entities may be appointed as trustees of deeds of trust. This provision does not regulate the actions a trustee must take to conduct a foreclosure sale. Rather other Virginia Code sections govern foreclosures, including provisions that (1) require that the trustee provide notice of the sale, Va. Code Ann. § 55-59.2 , (2) describe the required contents of a notice of sale, Va. Code Ann. § 55-59.3, and (3) explain the powers and duties of a trustee in conducting a foreclosure sale, Va. Code Ann. § 55-59.4. BANA Defendants do not contend that any of these foreclosure-related provisions are preempted. To the contrary, BANA Defendants followed these Virginia requirements.[14] Thus, BANA Defendants are not arguing that they are exempt from the requirements of Virginia foreclosure law.

### C.   Virginia Deed of Trust Trustees Have Fiduciary Duties and Are Covered Under the NBA

The Jaldins contend that a Virginia Deed of Trust trustee is not the kind of trustee which is covered by the NBA. *See Opening Brief* at 20-21. Referring to a California case and several cases from the United States District Court for the

---

[14] Indeed, the Jaldins themselves implicitly acknowledge that BANA Defendants complied with Virginia's foreclosure statutes requiring that notices of sale be sent by conceding that they received notices of sale for the sales which were subsequently cancelled. *Opening Brief.* at 7.

20

Eastern and Western Districts of Virginia, the Jaldins claim that a Deed of Trust trustee owes no fiduciary duties and thus should not be considered a trustee under the NBA. *Id.*

This argument is flawed as the Jaldins ignore the binding precedent of the Supreme Court of Virginia that trustees on Virginia Deeds of Trust do have a fiduciary relationship with both creditors and debtors. *See, Smith v. Credico Industrial Loan Co.,* 235 Va. 514 (1987); *Yaffe v. Heritage Savings & Loan Asso.,* 234 Va. 577 (1988).

In *Smith,* the plaintiff (a borrower whose home was sold at a trustee sale) sued to set aside a sale because the trustee purchased the property at the very same sale in which she acted as trustee. *Id.* at 515. The court held that trustees have a duty to ensure that the property is sold for the highest price possible and cannot act if there is a conflict of interest. *Smith,* 235 Va. at 517. A trustee under a Virginia deed of trust is a fiduciary for both the creditor and the debtor and must act with impartiality. *Id.* at 517 (citing *Whitlow v. Mountain Trust Bank,* 215 Va. 149, 152 (1974)).

Beyond case law, the Virginia Code also contemplates that Virginia Deed of Trust trustees have fiduciary duties. Virginia's statutes governing fiduciaries also regulate the conduct of Deed of Trust Trustees. *See* Va. Code Ann. § 64.2-1423. Additionally, the Virginia Code section governing trust powers of savings

institutions, Va. Code Ann. § 6.2-1083(A), specifically authorizes savings institutions to be appointed as a trustee on a Deed of Trust. *See* Va. Code Ann. § 6.2-1083(A)(4). A separate section provides that banks may act as trustees on a mortgage. Va. Code Ann. § 6.2-1000(A)(4). Since Virginia law contemplates that Virginia Deed of Trust trustees do act in a fiduciary capacity, Virginia Deed of Trust trustees are included in the NBA's consideration of fiduciaries.

As mentioned above, several Utah courts have analyzed whether a Utah statute that is somewhat similar to Va. Code Ann. § 55.58.1(2) is pre-empted under the NBA. One of those cases, *Bell v. Countrywide Bank* considered whether trustees on a Deed of Trust carry out fiduciary duties. 2012 U.S. Dist. LEXIS 35530, at *14. *Bell* recognizes that ReconTrust is a national bank and that the NBA discusses whether national banks may act as trustees. *Id.* The *Bell* court analyzed whether ReconTrust competes with banks and noted that under Utah law, no banks (either state or national) are allowed to act as foreclosure trustees. *Id.* at *21. *Bell* is a carefully-reasoned and lengthy opinion which explicitly found that the NBA covered deed of trust trustees. *Bell* also examined the regulations of the Office of the Comptroller of the Currency on the ability of national banks such as ReconTrust to carry out fiduciary activities. *Id.* at *34-44. It found that the NBA contemplated that banks acting in a fiduciary capacity pursuant to 12 U.S.C. § 92a would include acting as deed of trust trustees. *Id.* at 47. The *Bell* court carefully

22

analyzed whether the NBA covered deed of trust trustees and found that national banks exercise fiduciary powers when acting as deed of trust trustees. *Id.* at 44. Following the reasoning in *Bell*, this Court should find that the fiduciary powers granted to national banks under the NBA include the power to act as a trustee on a deed of trust and thus the Virginia statute which prohibits national banks not based in Virginia from being appointed as the trustee on a deed of trust should be pre-empted.

**D.    A Foreclosure by a Non-Virginia Based Trustee is, at Most, a Technical Error**

Even assuming that Virginia Code § 55.58.1(2) is not pre-empted, the District Court was still correct to dismiss the Jaldins' claims, as the only Virginia case which has interpreted § 55.58.1(2) refused to overturn a sale conducted by a non-Virginia based trustee. *See In re Trustee's Sale of the Property of Willie Brown et al.*, 67 Va. Cir. 204 (2005). In *Brown*, the note holders of deeds of trust appointed a California corporation and a Virginia corporation as trustees on the same deeds of trust. 67 Va. Cir. at 205. Under the terms of the appointments, either trustee could act alone or in concert with one another. *Id.* There was an initial report of the sale executed by the California corporation and then an amended report that was signed by the Virginia corporation. *Id.* The Commissioner of Accounts found that the sale was void *ab initio* because the

23

appointment of the California corporation violated Virginia Code Ann. §
55.58(1)(2).

In reviewing the Commissioner's finding, the court noted that a defective
foreclosure may be void in its entirety or it may be merely voidable. *Id.* at 212. A
foreclosure will only be set aside for "weighty" reasons, and will not be voided on
mere "technical" grounds. *Id.* The court held that, "the mere naming of" the
California corporation "as substitute trustee was not sufficient to set aside the
foreclosure sales when an otherwise qualified Virginia corporation was named and
acted as trustee." *Id.* at 213.

In the present case, as in *Brown*, a Virginia corporation was also named as a
trustee. *JA* at 97-98. Just as the *Brown* court held, the mere appointment of
ReconTrust as a non-Virginia corporation substitute trustee was, at best, a
technicality. The Jaldins simply have not suffered any harm from the appointment
of ReconTrust as a substitute trustee. Indeed, the facts of the instant case are even
more compelling than *Brown*, because no foreclosure sale ever occurred. The
Court here should likewise reject the Jaldins' claims from a substantive standpoint.

## IV. The District Court Correctly Found that the Terms of the Deed of Trust Were Not Breached

The Jaldins alleged that the terms of the Deed of Trust were breached
because (1) ReconTrust violated Va. Code Ann. Ann. § 55.58.1(2), (2) the loan
was not timely accelerated, and (3) the proper party did not accelerate the loan.

24

*See* First Amended Complaint, JA at 227-231.  The District Court's dismissal of these claims should be affirmed as there was no breach of the dead of trust and the acceleration was timely and done by the proper entity.

### A.    ReconTrust Did Not Breach the Terms of the Deed of Trust

The Jaldins contend that ReconTrust violated the Deed of Trust because it was named as trustee, which, they claim, violated Va. Code Ann. § 55.58.1(2) and a violation of law is a violation of the Deed of Trust.  *Opening Brief* at 26.  In Virginia, the elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.  *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009). The plaintiff bears the burden to establish the element of damages with reasonable certainty.  *Id.* Damages that are contingent, speculative, and uncertain are not recoverable because they cannot be established with reasonable certainty. *Id.* Damages are generally limited to the loss sustained.  *Id.* at 156.

The Jaldins contend that ReconTrust breached a provision of the Deed of Trust when it was named as substitute trustee.  *Opening Brief* at 26.  They contend this violated Va. Code Ann. Ann. § 55.58.1(2), which they claim, results in a

25

breach of the deed of trust. *Id.* However, as described above, Va. Code Ann. §
55.58.1(2) is pre-empted. Thus, no duty has been violated and there has been no
breach of the Deed of Trust.

### B.    The Note Was Timely Accelerated

The Jaldins argue that the Note was not properly accelerated because they
purportedly received the acceleration notice dated November 15, 2010 with only
twenty seven days to cure the default. *Opening Brief* at 29. This argument fails
for two reasons: (1) the loan was accelerated twice and the Jaldins make no
allegations in the First Amended Complaint that the second acceleration notice was
untimely and (2) BANA Defendants materially complied with the Deed of Trust.

### 1.    The Jaldins Received Two Notices of Acceleration

The Jaldins acknowledge receipt of a notice of acceleration of the Note on
November 22, 2010. *Opening Brief* at 6. The initial notice was dated November
16, 2010 and gave Mr. Jaldin thirty days to cure the default. *JA* at 59. However,
the Jaldins also received a second notice of acceleration in October 2011. *See*
Amended Complaint, *JA* at 225. The Jaldins' First Amended Complaint makes no
allegations regarding the timing of the second notice of acceleration. Because the
Jaldins have failed to show any deficiencies with the second notice of acceleration,

26

they have failed to show that the loan was not properly accelerated.   The Jaldins were required to make specific allegations that the power of sale did not properly accrue, *Condel v. Bank of America, N.A.*, 2012 U.S. Dist. LEXIS 93206, *14 (E.D. Va. July 5, 2012), and they failed to do so.

The Jaldins rely on *Bayview Loan Servicing, LLC v. Simmons*, 275 Va. 114 (2008) to support their claim that the terms of the Deed of Trust were breached.   In *Simmons,* the Supreme Court of Virginia upheld the Circuit Court's award of $150,000 in damages to a borrower where proper notice of sale was not given. However, the borrower in *Simmons* alleged that she never received notice of the acceleration or the sale.  275 Va. at 117.   Instead, the notice of sale was sent by certified mail and was returned to the loan servicer unclaimed.  *Id.*  The borrower further alleged that she had never received notice of the intent to accelerate.  *Id.* at 118.  At a hearing, the trial court found that the borrower had presented credible evidence that she had not received the acceleration notice.  *Id.*  The court further found that the loan servicer was required to prove that the borrower had actual knowledge of the acceleration notice, and that the loan servicer did not meet its burden of proof.  *Id.*

Here, the Jaldins have made no allegations that they did not receive the notices to accelerate.  To the contrary, the Jaldins allege that they twice received

27

the notice of acceleration. *Amended Complaint, JA* at 224-25. As a result, *Simmons* is distinguishable and does not apply in this case.

The Jaldins also cite to *Belote v. Bank of America*, 2012 WL 6608973 (E.D. Va. Dec. 18, 2012), where the court refused to dismiss a breach of contract claim on the basis that the notice to accelerate only gave twenty-nine days notice to cure. *Id.* at *4. However, in *Belote,* the foreclosure sale took place three months after the acceleration was sent. *Id.* Here, the notice of acceleration was first sent in November 2010 – and no sale has yet occurred. Furthermore, *Belote* is distinguishable since the court's recitation of the facts only refers to the notice of acceleration being sent once. *Id.* In the present case, the notice was sent twice. Thus, *Belote* does not apply to the facts of this case.

### 2.    BANA Defendants Materially Complied with the Notice Provisions of the Deed of Trust

The Jaldins also contend that the power of sale in the Deed of Trust[15] did not accrue after the November 2010 notice of acceleration was sent because they received the notice twenty seven days after it was sent, rather than the thirty days required by the Deed of Trust. *Opening Brief* at 29. The District Court found that substantial compliance with the requirements of the Deed of Trust is sufficient and dismissed the breach of contract claim on this basis. *See Transcript of Hearing on*

---

[15] The Deed of Trust allows the trustee to sell the property upon default. *See* JA at 46.

*Motion to Dismiss,* JA at 333.  The Jaldins therefore were not prejudiced because of the dates of the notices.  *Id.*

Substantial compliance with the notice provisions of the foreclosure of a Deed of Trust is sufficient when the rights of the parties are not affected in any material way.  *Virginia Hous. Dev. Auth. v. Fox Run Ltd. Pship*, 255 Va. 356, 367, 497 S.E.2d 747, 754 (1998).  The plaintiff has the burden of showing they were materially prejudiced by any defect in notice.  *Wood v. MorEquity, Inc.*, 331 F. Appx 243, 245 (4th Cir. 2009).

The Jaldins have not shown material prejudice from the November 2010 Notice of Intent to Accelerate.  For example, the Jaldins do not allege that on November 23, 2010 they attempted to cure the default (or have attempted to cure the default at any point) and that any such attempt to cure was rejected.  Nor do they make any claims that they would have acted any differently had the November 2010 notice arrived on November 16, 2010.  Indeed, since no sale has occurred, no prejudice is possible at all.  As a result, the Jaldins have failed to show any material prejudice because of the November 2010 Notice of Intent to Accelerate.

### 3.    BANA Defendants Were Authorized To Accelerate the Note

The Jaldins appear to contend that their loan was not properly accelerated because the acceleration notice was not sent by a successor to the original lender.

29

*Opening Brief* at 30-31.    However, the District Court correctly dismissed this

argument because (1) BANA had authority to accelerate the loan as the loan

servicer, (2) there is no requirement that the note owner be the party which

accelerates the loan, and (3) BANA has authority to accelerate the loan as the

holder of the note.

### a)    BANA Had Authority to Accelerate the Note as the Loan Servicer

The Jaldins concede that BANA is servicing their loan.  *Opening Brief*

at 30.  There is no question that a loan servicer is authorized to accelerate a loan

after it has fallen into default.  *Condel*, 2012 U.S. Dist. LEXIS 93206, *2.

Further, the Deed of Trust which Roger Jaldin signed specifically provides

that the loan servicer is entitled to receive payments, and thus is a successor to the

lender:

> 20. Sale of Note; Change of Loan Servicer; Notice of Grievance.
> The Note or a partial interest in the Note (together with this
> Security Instrument) can be sold one or more times without prior
> notice to Borrower.  A sale might result in a change in the entity
> (known as the "Loan Servicer") that collects Periodic Payments
> due under this note and this Security Instrument and performs
> other mortgage loan servicing obligations under the Note, this
> Security Instrument, and Applicable Law.  There might also be
> one or more changes of the Loan Servicer unrelated to a sale of
> the Note…

*See* JA at 52-53.

The Note has similar language, "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder'" *See* JA at 94.

Given that BANA, as the loan servicer, is authorized to accelerate Mr. Jaldin's loan, the District Court was correct to dismiss the breach of contract claim on this basis. *Transcript, Hearing on Motion to Dismiss Jaldin's First Amended Complaint*, JA at 333.

### b)     The Note Owner Is Not Required to Accelerate the Note

Although it is unclear, the Jaldins also appear to argue that the actual note owner (as opposed to the note holder or servicer) is the party which must accelerate their loan and that the note owner must establish its right to do so. *Opening Brief* at 31.

No such requirement exists under Virginia law. *Horvath v. Bank of New York,* 641 F.3d 617, 623, fn 3. (4th Cir. 2011). In *Horvath*, the borrower alleged that the foreclosing lender was required to show its standing to enforce the note prior to instituting foreclosure. *Id.* at 623, fn 3. This Court held that Virginia law does not require proof of standing to foreclose. *Id.* In the event of a default, the trustee is authorized to sell the property without bringing a court action. *Id.* There is no requirement that the trustee prove that it has standing to enforce the note. *Id.*

31

*See also Buzbee v. U.S. Bank,* 2012 Va. Cir. LEXIS 39, *2, *5 (2012) (there is simply no requirement in Virginia law for a secured creditor to show its right to enforce a Deed of Trust). As result, the Jaldins are incorrect that the note owner must somehow prove its ability to enforce the note as this argument has been solidly rejected by Virginia courts.

### 4.    BANA is Authorized to Accelerate the Note As the Note Holder

The promissory Note which Mr. Jaldin signed is endorsed in blank, and a copy was attached to the motion to dismiss. *See* JA at 94. Undersigned counsel represented at the hearing on the motion to dismiss the Jaldins' First Amended Complaint that the original Note is in BANA's possession. *See* JA at 322. The District Court found that the original Note is in BANA's possession and that BANA is the Note holder. *See* Transcript, Hearing on Motion to Dismiss Plaintiffs' First Amended Complaint, JA at 322, 328.[16]

---

[16] The Jaldins argue that the fact that BANA is the note holder cannot be established on a motion to dismiss. *See Opening Brief* at 30. However, this Court may examine evidence that the foreclosing entity was the note holder without converting a motion to dismiss into a motion for summary judgment. *See Horvath v. Bank of New York,* 641 F.3d at 617. In *Horvath,* this Court affirmed the District Court's dismissal of a borrower's claims that the lender needed to show standing to foreclose. The *Horvath* court explained that the foreclosing entity had shown that it was the note holder and affirmed the trial court's dismissal of the action. *Id.* at 619. *See also Pham v. Bank of N.Y.,* 856 F. Supp. 2d 804, 812 (E.D. Va. 2012). Furthermore, although not attached to Plaintiff's complaint, the court may consider documents referenced in Plaintiff's complaint which are pertinent to the claims, without converting the motion to dismiss into a motion for summary judgment. *See*

Since the Note is endorsed in blank and is in BANA's possession, custody or control, the Note is bearer paper, Va. Code § 8.3A-205(b), and BANA is entitled to enforce the Note. Va. Code. § 8.3A-301. Although Virginia law does not require that BANA show that it is the Note holder, it has clearly established in this case that it is entitled to accelerate the Jaldins' loan in its capacity as loan servicer and Note holder.

## V. BANA Disclosed the Identity of the Note Owner

15 U.S.C. § 1641(f)(2), a section of the Truth In Lending Act ("TILA"), requires that upon written request from the borrower, loan servicers provide the borrower with the name, address, and telephone number of the owner of the obligation or the master servicer, to the best of the servicer's knowledge. The Jaldins allege that they sent three letters to BANA which requested the identity of the note owner and received responses indicating that the note owner was (1) Bank of America, N.A., for the Benefit of the HALO 2007-2 Trust and (2) Deutsche Bank National Trust Company, as Trustee, for holders of the HSI Asset Loan Obligation Trust ["HALO"] 2007-2. *See Opening Brief*, at pp. 8-9. They also claim that they requested this information from MERS, *see id.* at 8, but fail to explain how the knowledge of MERS, an un-related third party, can be attributed

---

*McInnis,* 2012 U.S. Dist. LEXIS 13653, *18, Fn. 7, adopted *McInnis* by 2012 U.S. Dist. LEXIS 13602, E.D. Va. Feb. 3, 2012.

to BANA Defendants.   The District Court was correct to dismiss the Jaldins'

claims brought under 15 U.S.C. § 1641(f)(2) since (1) BANA identified the owner

of the loan in its responses and (2) a loan servicer cannot be liable for a §

1641(f)(2) violation.  *See* JA, 335.


### A.    BANA Appropriately Identified the Note Owner

The Jaldins acknowledge that all of BANA's responses identified the HALO

Trust as the note owner.  *Opening Brief* at pp. 8-9.  The statute requires that BANA

provide either the name of the owner of the debt or the master servicer.  15 U.S.C.

§ 1641(f)(2).  Each response to the Jaldins identified the HALO Trust 2007-2 as

the ultimate owner.  The Pooling and Servicing Agreement for HSI Asset Loan

Obligation Trust 2007-2, available at:

http://www.sec.gov/Archives/edgar/data/1323260/000114420407060926/v093849

_ex4-1.htm (last accessed July 9, 2013), states that the mortgage loans placed in

the trust will be assets of the trust.

In a recent case, the United States District Court for the Eastern District of

Virginia recognized that the owner of the loan in a securitized trust is the trust.  In

*O'Dell v. Deutsche Bank Nat. Trust Co.*, 2013 WL 2389874 (E.D. Va. May 30,

2013), the borrower brought a claim under 15 U.S.C § 1641(g), which requires that

the owner of the promissory note notify the borrower when the ownership of the note changes. *Id.* at *9. The borrower's note had been transferred into a trust in June 2006. *Id.* at 3. The court found that the trust owned the loan. *Id.* at *12.

The *O'Dell* court's determination that the trust owned the note is applicable to this case. Here, the Jaldins acknowledge that each of the notices they received from BANA Defendants provided the name of the owner-trust. *See Opening Brief* at 8-9. The statute allows BANA to provide the identity of either the master servicer or the owner of the debt. 15 U.S.C. § 1641(f)(2). The term "master servicer" is defined as the servicer of the loan. 12 U.S.C. § 2605(i)(2). All of BANA's responses provided the identity of the owner – the HALO Trust – and provided contact information for BANA, which is the master servicer of this loan. Consequently, BANA complied with 15 U.S.C. § 1641(f)(2) and the District Court was correct to dismiss the claim against BANA.

## B.    BANA Is Not Liable For a § 1641(f) Claim As a Servicer

Even assuming *arguendo* that BANA did not appropriately identify the owner of the Jaldins' loan, BANA cannot be held liable under 15 U.S.C. § 1641(f)(2) because there is no servicer liability under the TILA statute. The Jaldins acknowledge that BANA is their loan servicer and that BANA does not own their loan. *Opening Brief* at 31. As the Ninth Circuit and Eight Circuits recently found, the statute limits liability to servicers who are also owners of the

loan. *See Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1247 (9th Cir. 2012);

*Keiran v. Home Capital*, 2013 U.S. App. LEXIS 14102 (8th Cir. Minn. July 12,

2013).[17]

---

[17] The Ninth Circuit and Eight Circuit's position is consistent with the majority of courts across the country that have also held that TILA does not provide a private cause of action against servicers for a violation of section 1641(f). *See, e.g., Kelly v. Fairon & Assoc.*, CIV. No. 10-3228, 842 F. Supp.2d 1157, 1162, 2012 WL 361697, at *3-4 (D. Minn. Feb. 3, 2012)(granting summary judgment and holding TILA does not allow a private cause of action against servicers for violation of Section 1641(f)); *Sherrell v. Bank of Am., N.A.*, No. CV F 11-1785, 2011 WL 6749765, at *12 (E.D. Cal. Dec. 22, 2011)(holding defendant's role as only loan servicer absolved defendant from liability under TILA); *Selby v. Bank of Am., N.A.*, No. 09-CV-2079, 2011 WL 902182, at *6 (S.D. Cal. March 14, 2011) (granting motion to dismiss and holding that "section 1641(f), liability for violations of TILA rests squarely and solely with creditors."); *Ording v. BAC Home Loans Servicing, LP*, Civ. No. 10-10670, 2011 WL 99016, at *3-4 (D. Mass. Jan. 10, 2011)(dismissing claim for TILA violation against servicer and holding that liability for violations of section 1641(f) rest solely with the creditor or a servicer who is also the owner of the mortgage obligation); *Stump v. WMC Mortg. Corp.,* CIV.A. 02-326, 2005 WL 645238, at *10 (E.D. Pa. Mar. 16 2005) (granting summary judgment on claim against servicer and holding that loan servicers cannot be liable under TILA because TILA imposes liability only on purchasers and assignees of mortgages); *Clark v. Fairbanks Capital Corp.,* No. 00–C–7778, 2003 WL 21277126, at *3 (N.D.Ill. Jun. 2, 2003) (holding "TILA expressly exempts servicing agents from liability unless the servicing agent has or had an ownership interest in the loan.").; See *Khan v. Bank of N.Y. Mellon*, 849 F.Supp.2d 1377,1379, 2012 WL 1003509, at *2 (S.D. Fla. Mar. 19, 2012) ("TILA, however, does not impose liability on servicers, but rather provides a private cause of action against 'creditor[s] who fail[ ] to comply with any requirement imposed under . . . section 1635 of this title [and] subsection (f) or (g) of section 1641.'") (quoting 15 U.S.C. § 1640(a)); *Holcomb v. Fed. Home Loan Mortg. Corp.*, No. 10-81186-CIV, 2011 WL 5080324, at *6 (S.D. Fla. Oct. 26, 2011) (J. Hurley) (holding servicers are absolved from any liability under TILA); *Patton v. Ocwen Loan Servicing, LLC,* 2011 WL 1706889, No. 11-CIV-445, *6 (M.D. Fla. May 5, 2011) ("A loan servicer may be liable under TILA only if it currently owns or previously owned the mortgage note at issue."); *Borden v. Saxon Mortg. Servs., Inc.*, No. 08-61851-

36

Because BANA does not own the Jaldins' loan, it cannot be held liable for a claim brought under 15 U.S.C §1641(f)(2).

### C. The Jaldins Failed to Show They Are Entitled to Damages Under TILA

Even assuming *arguendo* that BANA is liable as a mortgage servicer under TILA, the District Court found that the Jaldins failed to show detrimental reliance to obtain actual damages. *See* JA at 335. This Court should affirm the District Court on this point because the law is clear that a consumer must show detrimental reliance on an inaccurate or incomplete disclosure in order to seek and obtain actual damages under TILA. TILA provides that a creditor who fails to comply with any requirement imposed under TILA is liable to any person for "any actual damage sustained by such person as a result of the failure . . . ." 15 U.S.C. § 1640(a)(1). Accordingly, courts require that a consumer show detrimental reliance on an incomplete disclosure in order to obtain actual damages under TILA. *Kittrell v. RRR, L.L.C.*, 280 F. Supp. 2d 517, 520 (E.D. Va. 2003); *Basnight v. Diamond Developers, Inc.*, 146 F. Supp. 2d 754, 762 (M.D.N.C. 2001); *Turner v.*

---

CIV, 2010 WL 3834590, at *8 (S.D. Fla. Sep. 28, 2010) (mortgage servicer exempt from liability for claims pursuant to 15 U.S.C. § 1641(f), *Danier v. Fannie Mae*, 2013 U.S. Dist. LEXIS 16701, *6 (S.D. Fla. Feb. 7, 2013), ( finding that TILA does not impose liability on servicers, but rather on creditors who fail to comply with various requirements under TILA.) ; *Valrie v. Nationstar Mortgage, LLC*, 900 F. Supp. 2d 1294, 1298 (S.D. Ala. 2012).

37

*Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) (holding the language of 15 U.S.C. § 1640(a)(1) and the legislative history of the section "indicates that the statute's authors intended that plaintiffs must demonstrate detrimental reliance in order to be entitled to actual damages under TILA"); *U.S. v. Petroff-Kline*, 557 F.3d 285, 296-297 (6th Cir. 2009) (holding under TILA debtor must prove actual damages and that actual damages require a showing of detrimental reliance); *Vallies v. Sky Bank*, 591 F.3d 152, 158 (3d Cir. Pa. 2009) (holding "[w]ithout detrimental reliance, only statutory damages are available" under TILA); *Gold Country Lenders v. Smith (In re Smith)*, 289 F.3d 1155, 1157 (9th Cir. 2002) (holding that in order to receive actual damages for a TILA violation, a borrower must establish detrimental reliance); *Perrone v. GMAC*, 232 F.3d 433, 440 (5th Cir. 2000) (holding individual reliance is necessary to prove actual damages); *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 916-917 (8th Cir. 2000) (requiring plaintiff to prove an actual injury or loss in order to recover actual damages under TILA and that TILA violation was the proximate cause of those actual damages); *McDonald v. Checks-N-Advance, Inc. (In re Ferrell)*, 539 F.3d 1186, 1192 (9th Cir. 2008) (reaffirming adoption of detrimental reliance standard).

Specifically, a plaintiff must allege facts in the complaint that, if proven, would constitute actual damages. *Haun v. Don Mealy Imps., Inc.*, 285 F. Supp. 2d 1297, 1303-1304 (M.D. Fla. 2003). In *Haun*, where the plaintiff summarily

38

claimed actual damages under TILA without identifying any injury at all that was caused by the TILA violation, the court granted defendant's motion to dismiss plaintiff's claim for actual damages. *Haun*, 285 F. Supp. 2d at 1303-1304. The plaintiff's allegation in *Haun* stated: "as a direct result of [defendant's several alleged TILA violations], Plaintiff's statutory and regulatory rights have been violated, and for which [sic] Plaintiff is entitled to statutory and actual damages." *Id.* at 1304.

As in *Haun*, the Jaldins have not pled one fact in support of a claim for actual damages.  Although it is unclear from the Jaldins' First Amended Complaint whether they are seeking actual damages, *see* JA at 237, the Jaldins have failed to show detrimental reliance which would entitle them to actual damages under TILA.

## VI.    BANA and ReconTrust Did not Make Any Deceptive Statements which Could Give Rise to an FDCPA Claim

The Jaldins argue that BANA Defendants violated the Fair Debt Collection Practices Act ("FDCPA") because (1) ReconTrust was not authorized to act as trustee, (2) BANA falsely claimed to be the note owner and (3) BANA falsely used ReconTrust to collect a debt.  The District Court was correct to dismiss the Jaldins' FDCPA claim because (1) ReconTrust was authorized to act as trustee and was entitled to enforce the note, (2) BANA has the right to enforce the note, and (3) the FDCPA does not apply to BANA.

39

### A.    ReconTrust was Authorized to Act as Trustee

Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Jaldins argue that ReconTrust was not authorized to act as a trustee. *Opening Brief at* 35. However, as discussed above, the Virginia statute which prohibits ReconTrust from acting as a trustee is pre-empted. Consequently, since ReconTrust was authorized to act as trustee (and Virginia law authorizes a trustee to sell a property upon default, *see* Va. Code Ann. § 55-59.3) the Jaldins can have no claim against ReconTrust for violating the FDCPA when ReconTrust made no false representations and took no unauthorized actions against the Jaldins.

### B.    BANA Has the Right to Enforce the Note

The Jaldins contend that BANA was not authorized to enforce the note. *Opening Brief* at 36. However, as discussed above, BANA is the Jaldins' loan servicer and Note holder. As a result, BANA has the right to enforce the Note. *Condel,* 2012 U.S. Dist. LEXIS 93206, *2. Consequently, the Jaldins can have no claim against BANA when it is exercising its rights to enforce the Note.

### C.    The FDCA Does Not Apply to BANA

The FDCPA only applies to debt collectors, which are defined as those who collect debts owed to another. *Holland v. Chase Home Fin., LLC*, 2011 U.S. Dist. LEXIS 102197, *21 (E.D. Va. Sept. 9, 2011). In *Holland*, the borrower brought an

40

FDCPA claim against her mortgage originator and the holder of her mortgage note, Chase Home Finance, LLC. *Id.* at \*22. The court found that the FDCPA does not apply to creditors – *i.e.*, the people to whom the debt is owed. *Id.* at \*22. As the District Court noted in *Scott v. Wells Fargo Home Mortgage,* 326 F. Supp. 2d 709, 717 (E.D. Va. 2003) (*aff'd in part, vacated in part, remanded by* 143 Fed. Appx. 525 (4th Cir. Ca. 2005), it is well settled that creditors and mortgage servicers are not considered to be debtor collectors under the FDCPA.[18] Since BANA is the Note holder, JA at 94, and mortgage servicer, *First Amended Complaint*, JA at 230, it is not a debt collector under the FDCPA. As such, it has no FDCPA liability.

Assuming, *arguendo*, that BANA is a debt collector under the FDCPA, the Jaldins have not shown that BANA has made any misrepresentations. As demonstrated above, BANA is the Note Holder and the loan servicer. Thus, BANA is entitled to enforce the Note. BANA's statements regarding the

---

[18] Numerous other cases from this District alone have reached the same conclusion. Citations to just a few of the more recent cases follow: *See eg., Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 879, 2012 U.S. Dist. LEXIS 106073, \*6, (E.D. Va. 2012); *Bradford v. HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 348 (E.D. Va. 2011); *Blagogee v. Santander Consumer USA, Inc.*, 2011 U.S. Dist. LEXIS 155613, \*6 (E.D. Va. Nov. 29, 2011) *aff'd* 474 F. Appx. 366 (4th Cir. Va. 2012); *Gray v. Wittstadt Title & Escrow Co., LLC*, 2011 U.S. Dist. LEXIS 141830, \*5 (E.D. Va. Nov. 28, 2001), *aff'd* 475 F. Appx. 461 (4th Cir. Va. 2012).

foreclosure cannot be false and deceptive when BANA is exercising its rights as the Note Holder and the servicer of the Deed of Trust.  As such, Plaintiffs have no claim against BANA for allegedly false statements.

## VII.    The Jaldins Have Not Stated A Claim to "Remove Cloud on Title"

ReconTrust was appointed as trustee by a substitution of trustee, a recorded document. *See* JA at 97.  The Jaldins argue that the substitution of trustee violates Virginia law because ReconTrust was not validly appointed as trustee. *Opening Brief* at 37.

The Jaldins cite to *Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC*, 2011 U.S. Dist. LEXIS 130335, *1, n.1 (W.D. Va. Nov. 10, 2011) for the proposition that they need only allege that they have valid legal and equitable title and that the defendant asserts some claim that constitutes a cloud on that title.  However, the Jaldins' interpretation of this case ignores the Virginia Supreme Court case of *Maine v. Adams*, 277 Va. 230 (2009), which states that the plaintiff in a quiet title action must show that it has superior title.  277 Va. at 238.  Here, the Jaldins cannot show that they have superior title, as their Property is encumbered by the Deed of Trust and they do not challenge the validity of the Deed of Trust. *Opening Brief* at 37.  They do not contend that the Deed of Trust has been cancelled or otherwise forgiven.

42

The Jaldins' arguments fail even under the standard which they claim applies, as they do not have legal or equitable title to the Property. They have conveyed these interests to the Trustee. *See Deed of Trust*, JA at 46. Although the Amended Complaint alleges that the Jaldins have legal and equitable title to the Property, this allegation is contradicted by the terms of the Deed of Trust, which is an exhibit to the Amended Complaint. Furthermore, the claim for quiet title or remove cloud on title presumes that the substitution of trustee is invalid because of the appointment of ReconTrust as a trustee. As described above, the appointment of ReconTrust was valid as Va. Code Ann. § 55.58.1(2) is pre-empted.

## **CONCLUSION**

The Jaldins base their claims on a statute which is pre-empted under federal law and attempt to graft requirements on Virginia law which do not exist.  As a result, this Court should affirm the dismissal of the Jaldins' claims.

Date: July 18, 2013

Respectfully submitted,

*/s/ Joseph J. Patry*

Joseph J. Patry (VSB # 73302)
Blank Rome LLP
JPatry@BlankRome.com
600 New Hampshire Avenue, NW
Washington, D.C. 20037
*Tel:* (202) 772-5940
*Fax:* (202) 572-1429

*Attorneys for Appellees Bank of America, N.A. & ReconTrust Company, N.A.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Type-Volume Limitation, Typeface Requirements, and Type Style

Requirements

Appellee's Opening Brief complies with the type-volume limitation of FED.

R. APP. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 11,003 words, or

less, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

Office 2007 in 14-point Times New Roman font.

Date:  July 18, 2013

Respectfully submitted,

*/s/ Joseph J. Patry*

Joseph J. Patry (VSB # 73302)
Blank Rome LLP
JPatry@BlankRome.com
600 New Hampshire Avenue, NW
Washington, D.C. 20037
*Tel:* (202) 772-5940
*Fax:* (202) 572-1429

*Attorneys for Appellees Bank of
America, N.A. & ReconTrust
Company, N.A.*

45

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of July, 2013 I filed the foregoing

Appellee's Opening Brief using the Clerk's CM/ECF system, which will send

notice of the foregoing to the following counsel of record:

> Gregory Bryl, Esq.
> help@bryllaw.com
> Bryl Law Offices
> 1629 K Street NW, Suite 300
> Washington, DC 20006

I also caused eight copies of the foregoing to be sent via delivery to the

Court.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Joseph J. Patry*

_____

Joseph J. Patry (VSB # 73302)
JPatry@BlankRome.com
Blank Rome LLP
600 New Hampshire Avenue, NW
Washington, D.C. 20037
*Tel:* (202) 772-5940
*Fax:* (202) 572-1429

*Attorneys for Appellees Bank of
America, N.A. & ReconTrust
Company, N.A.*

</div>

46